[ \*18 ] \*LIGHTBODY *vs.* THE NORTH AMERICAN INSURANCE COMPANY.

An *insurance company* are bound by a policy issued by an agent appointed to effect insurances for *a particular city and its vicinity*, although he insures property at a distance of 100 miles in another city *for which and its vicinity* the company had another agent, if the agent issuing the policy claims to have authority to effect the insurance, and the fact of the existence of the other agency is not brought home to the knowledge of the assured.

If facts transpired on the application for the insurance to put the applicant upon inquiry as to the authority of the agent, they should have been submitted to the jury, and cannot be urged on a *bill of exceptions* in support of a motion for a new trial.

Evidence that the agent of the company in the place where the buildings insured were situate, would not have insured them had application been made to him, was held not to be admissible.

A *policy* bearing date on the day the premium is paid, takes effect by relation from that day, although not *delivered* until several days afterwards.

A delivery of a policy by an agent is good, and binding upon the principals where the premium had been previously paid, although the *assured* had been informed by the principals, that they intended to revoke the appointment of the agent, if such delivery takes place before revocation or knowledge on the part of the agent of the intent to revoke.

THIS was an action on a *policy of insurance* tried at the Oneida circuit in October, 1838, before the HON. PHILO GRIDLEY, one of the circuit judges.

The plaintiff claimed that the defendants, on the 30th March, 1837, insured against fire, four wooden stores belonging to him, situate in *Utica*, for the term of one year, and underwrote the sum of $2,000 ; and that on the next day the stores were wholly consumed by fire. The plaintiff produced a *policy* bearing date 30th March, 1837, signed by the president and secretary of the North American Insurance Company, and purporting to be *countersigned* on the same day *at Troy*, by H. Z. Hayner, *Agent.* The Company is located in the city of New York, and was formerly known by the name of " The Phœnix Fire Insurance Company." The plaintiff residing in *Utica* sent a survey to R. J. Knowlton residing in *Troy*, and wrote him requesting to have insurance effected upon [ \*19 ] his stores, but designating no company in particular \*in which to effect the insurance. Knowlton on the receipt of the plaintiff's letter called upon Hayner, and enquired if he had authority to take risks in *Utica*. Hayner answered that he thought he had ; upon which Knowlton handed him the survey. About a week afterwards Knowlton again called, when Hayner told him that he had authority to make the insurance. Whereupon Knowlton agreed to the terms proposed by Hayner, but not being in funds at the time, to pay the premium, called on the 30th March, 1837, paid the premium and took a receipt in these words : " Rec'd of Samuel Lightbody thirty dollars as a premium on an insurance

of his wooden buildings in Utica, for the amount of two thousand dollars —see survey in my hands, 30th March, 1837. (Signed) H. Z. Hayner, agent for North Am. Ins. Co. N. Y." When the receipt was given, Hayner said he was busy in court and would give the policy to Knowlton at a future day. The receipt was given late in the evening of the *thirtieth* of March, and at about two o'clock in the morning of the next day the fire broke out in one of the buildings, which consumed the whole of them. The plaintiff prepared and forwarded his preliminary proofs to Hayner, who received them within ten days after the fire. A few days afterwards the plaintiff called upon Hayner for the policy, who made an excuse for not delivering it, but told the plaintiff that he would see him in New York and there deliver it to him. The policy had been made out previous to the plaintiff's demand of it. The plaintiff proceeded to New-York, and on the *twenty-first* day of April, called upon the officers of the company for payment of the loss, who refused to pay, denying the authority of Hayner to make an insurance in Utica. The plaintiff had two interviews with the officers of the company on that day, and at the second interview was told that Hayner's authority as agent of the company had been revoked, that if Hayner delivered a policy pursuant to his receipt, the company would not be bound by such delivery, and that a letter would be sent to him notifying him of the revocation of his power as agent—which letter was sent by the first mail. In the meantime Hayner and the plaintiff met in the city of *New-York, [ *20 ] on the same *twenty-first* day of April, when Hayner voluntarily delivered the policy to the plaintiff without any solicitation from the latter. At this time the plaintiff did not inform Hayner of his powers having been revoked, or of an intended revocation. The letter of revocation bears date on the *twenty-second*, but was not received by Hayner until the *twenty-third* day of April. The defendants objected to the reading in evidence of the *receipt* and the *policy*, but the objections were overruled and the defendants excepted.

The defendants read in evidence the letter of appointment of H. Z. Hayner as their agent; in it they inform Mr. Hayner that the late Phœnix Insurance Company has been revived under its present name, that the company propose again assuming *country risks* and re-establishing its agencies, and adding, " You have been re-appointed an agent of the company *for your place* for effecting insurances." This letter bore date in October, 1836, and was accompanied by a letter of instructions commencing in these words, " For the purpose of extending their business *in Troy and its vicinity*, this company have appointed you their agent" &c. The company, in those letters, informed Hayner that a package of 25 policies signed by the president and secretary, had been prepared and would be

forwarded to him. On receiving this appointment, Hayner inserted an advertisement in two of the public newspapers in Troy, announcing that he had been appointed an agent of th company to effect insurances on all kinds of buildings, machinery, merchandize and household furniture, *in the city of Troy and its vicinity*. It, however, was proved by *Knowlton* that *he* had not seen the letter of appointment, the instructions or the advertisement, and that he called upon Hayner to effect the insurance in consequence of seeing the words, on a label upon the door of his office, inscribed "Phœnix Fire Insurance Company." The defendants also proved that they had *an agency for the city of Utica and its vicinity*, in the month of March, 1837, that such agency was advertised, but whether it was known to the plaintiff was not shown. The defendants offered to prove that the risks in the block in which the plaintiff's buildings were situate were very hazardous, and that their agent in Utica had refused to insure buildings in that block, which *was generally known in Utica and among the owners and occupants* of that block ; and also offered to prove by their *Utica agent*, that if the plaintiff had applied to him for insurance upon the buildings destroyed, he would have refused to take the risk : which offers were objected to and the evidence refused to be received. The defendants next offered to prove by their *secretary* that he had read the *survey* signed by the plaintiff, that he had been in the business of fire insurance eleven years, and that the risk in question was a *special risk*, (which by the letter of instructions the agent had no authority to take without consulting his principals,) and that the company would not have taken the risk had the application been made at the principal office. This offer was also objected to, and the evidence rejected. The judge charged the jury that the plaintiff was entitled to recover, and the jury accordingly found a verdict in his favor for $2187,21. The defendants by their counsel having excepted to the charge of the Judge, and to the various decisions made by him as to the reception and rejection of evidence, obtained his signature to a bill of exceptions, and now moved for a new trial.

*W. C. Noyes*, for the defendants, insisted that his clients were not bound by the policy declared upon. Hayner was not authorized to insure buildings in *Utica*, but was expressly limited to *Troy and its vicinity* by his appointment and letter of instructions. Again : the policy was not available to the plaintiff, having been received by him after notice that the defendants had repudiated the act of Hayner, and that they intended to revoke his authority. The evidence offered by the defendants, that their agent in *Utica* had refused to insure buildings in the same block in which the plaintiff's buildings were situated, and that such fact was gen-

erally known, and that had application for insurance been made to such agent, it would have been declined, ought to have been received; it would have shown the *mala fides* of the plaintiff in applying for *insurance to the agent of the defendants at *Troy*, and also    [ *22 ] in receiving the policy after knowledge that the act of Hayner had been disavowed by the defendants. The receipt for the premium and the policy should not have been received in evidence.

*C. A. Mann*, for the plaintiff. The contract of insurance was perfect on the payment of the premium on the *thirtieth* day of October, and the subsequent delivery of the policy related back to that day. Hayner had full power to effect the insurance. He is not limited by his appointment or letter of instructions to any particular territory, and being furnished with blank policies, signed by the President and secretary of the company, the plaintiff might well consider him the *general agent* of the company. If he has violated his *private instructions*, third persons cannot be affected thereby. The delivery of the policy was previous to the revocation of his power; indeed the policy may well be considered as having been delivered in Troy, at the time when the plaintiff called for it and the agent promised to take it to New-York, and deliver it there.

*By the Court*, BRONSON, J. Without intending to intimate any opinion on a question which may be made between the principals and their agent, I shall assume, for all the purposes of this case, that the agent departed from his instructions *in taking a risk at Utica*. This hypothesis will not aid the defendants. Hayner was a general agent for effecting insurances on behalf of the company, and acted within the general scope of his authority in taking this risk. Although he must answer to his principals for departing from their private instructions, he clearly bound them so far as third persons, dealing with him in good faith, are concerned. The question is not so much what authority the agent had in point of fact, as it is what powers third persons had a right to suppose he possessed, judging from his acts and the acts of his principals. *Perkins* v. *Wash. Ins. Co.*, 4 *Cowen*, 645. This rule is necessary to prevent fraud, and encourage confidence in dealing. 2 *Kent's Comm.* 620.

*It is difficult to conceive how the defendants could have con-    [ *23 ] ferred a more unlimited authority upon the agent, so far as third persons are concerned, than they did by furnishing him with policies already executed by the officers of the company, and ready to be delivered to any one who might wish to contract, after his name, the subject insured, extent of the risk, and date of the transaction had been inserted in the contract. The plaintiff had a right to believe that the defendants reposed

unlimited confidence in Hayner in relation to the subject of his agency, and it would be a monstrous doctrine to hold that they may now discharge themselves by setting up their private instructions, which were wholly unknown to the plaintiff when he entered into the contract. The rule is different in relation to a *special* agent—he cannot bind his principal beyond the precise limit of his authority. But Hayner was a *general* agent, acting within the scope of his powers; and if he was wrong in taking this risk, that is a question to be settled between him and his principals.

The objection that this was a *special risk*, and that Hayner had no authority to take special risks without consulting the company, depends on the same principle as the objection already noticed, and requires no separate consideration.

There is no ground for imputing bad faith to the plaintiff, or to his agent, Knowlton, who negotiated the contract with Hayner. So far as appears, the plaintiff did not know that the defendants had an agent in Utica; and if he had known that fact, he did not instruct his agent at Troy to insure with the defendants. Knowlton called on Hayner, because he saw from the sign on his door that he was an agent for making insurance. He asked Hayner if he had authority to take risks in Utica, and the agent answered he thought he had. There was nothing in this calculated to excite a doubt concerning the extent of the agent's powers : and besides, the counsel did not suggest on the trial, as they did on the argument, that there was enough to put Knowlton upon enquiry. It is too late now to raise that question, if there was ever any ground for making it.

[ *24 ]     *The offer to prove that risks in the plaintiff's block were very hazardous, was of no manner of consequence, so long as there was no pretence that the plaintiff had either misrepresented the true character of the risk, or omitted any thing which should have been stated in the survey on which the defendants acted. Nor was it a matter of any moment that the defendants' agents at Utica had refused to take risks in that block, and would have refused this risk had it been offered to them. That fact could prove nothing against the plaintiff. And had the plaintiff *known* that R. & S., the agents at Utica, had refused to insure other buildings in the same block, which is more than the defendants offered to prove, that would not alter the case. Because other persons could not obtain insurance, it did not follow that the plaintiff could not ; and if the plaintiff himself had been refused by one agent or company, it did not preclude him from applying to another. If he was chargeable with no concealment or misrepresentation, affecting the contract which

was made, it cannot be avoided on the ground that one or even a dozen other persons had refused to make a similar contract with him.

The defendants did not avow on the trial that they intended to impute fraud to the plaintiff; but if they had done so, the several offers of evidence did not go far enough to raise such a question.

If the policy was well delivered, it took effect by relation from the day of its date, which was the day on which the premium was paid and the contract concluded. *Jackson* v. *Ramsay*, 3 *Cowen*, 75, *and cases cited.* It was the manifest intent of the parties that the contract should operate from the day of its date, so as to give the plaintiff the same legal remedy which he would havé had if the policy had in fact been delivered on that day; and the law will give effect to that intention. This doctrine was not directly denied on the argument; but it was said that the policy had in fact been delivered on that day; and the law will give effect to that intention. This doctrine was not directly denied on the argument; but it was said that the policy was not duly delivered on the 21st April, for the double reason that the power of the agent was then at an end, and the plaintiff had notice that the defendants refused to ratify or be bound by his act in making the contract.

*Although the defendants told the plaintiff on the 21st of [ *25 ] April that the authority of Hayner had been revoked, the letter of revocation was not even written until the next day, and it was not received by Hayner until the 23d of April. So far as the agent was concerned, he not only pursued his authority in delivering the policy, but he acted in perfect good faith towards his principals, for he had no notice that they intended to put an end to his agency. The delivery was well made and bound the defendants, unless there was something in the circumstances of the case which should have precluded the plaintiff from receiving the policy when it was offered to him.

How does the question stand in relation to the plaintiff? He had, as we have already seen, made a valid contract with the defendants, and was entitled to the usual evidence of that contract—a policy of insurance. He could, I think, have maintained an action on the case against the defendants for a refusal to deliver the policy, in which he would have recovered damages to the full amount of his loss. But if his remedy at law was unquestionable, he had a perfect equitable right to the delivery of the usual policy, which he might have enforced in the proper forum. *Perkins* v. *Washington Ins. Co.*, 4 *Cowen*, 645. Having this equitable right to the policy, he was clearly at liberty to re-ceive it, when voluntarily tendered to him by one who had authority to deliver it. It would be a refinement in law, if not in ethics, to hold a man precluded from accepting that which was rightfully his due, because

he happened to know that the debtor did not intend to discharge his obligation.

The plaintiff was not told that the authority of Hayner had been, or would be revoked, until his second call at the defendants' office on the 21st of April, and, for aught that appears, the policy had then been delivered. But suppose the delivery was after the second call. The plaintiff was not chargeable with notice that the powers of the agent had been revoked, for such was not the fact. The defendants can claim nothing on the ground of having given information which was untrue. The only notice, then, which could properly be imputed to the plaintiff, [ *26 ] was notice that the defendants *intended to revoke the powers of the agent. Immediately afterwards, if it had not happened before, Hayner met the plaintiff, in pursuance of the appointment previously made at Troy, and delivered the policy. There was no false suggestion or deceit on the part of the plaintiff—he neither said nor did any thing to induce the delivery. The matter then comes to this : The plaintiff accepted that which was voluntarily tendered, and was his rightful due, with the knowledge that his debtor did not intend he should have it. That cannot be a good impeachment of his title.

Although the plaintiff could not sue on the receipt for premium, that paper was properly received in evidence as a part of the transaction. The objection to reading the policy in evidence, is disposed of in what has already been said ; and so also with the objection that the preliminary proofs showed a loss accruing *previous* to the execution and delivery of the policy. There are, I believe, no other exceptions which were not abandoned on the argument.

New trial denied.