The City of Davenport v. The Peoria Marine and Fire Insurance Co.

---

## The City of Davenport v. The Peoria Marine and Fire Insurance Company.

1. **Principal and agent:** GENERAL AGENT. As to the public, the authority of a general agent is measured by the usual extent of his general employment, and can be limited by private instructions as to the mode and manner of executing the agency, only where the parties dealing with him have knowledge of such instructions.

2. **Lien:** JUDGMENT AGAINST A CITY. A judgment against a city is not a lien upon premises owned by it, and used for hospital purposes.

3. **Insurance:** ANTEDATED POLICY. An agreement of insurance was made between the parties by their agents on the 20th day of March; on the night of the same day the property was destroyed by fire; on the morning of the 21st the policy was executed, delivered and received in perfect accordance with that agreement, both parties being ignorant of the fire: *Held,* That the policy was valid and binding.

The City of Davenport v. The Peoria Marine and Fire Insurance Co.

*Arg.* 1. **Corporations:** CONTRACTS. Acts of a corporation, evidenced by a vote, written or unwritten, are as binding upon it, and are as complete authority to its agents, as the most solemn acts done under the corporate seal.

2. —— BY AGENTS. A corporation may be bound by express promises through its authorized agents, and by implied promises from its acts and the acts of its agents.

3. —— CHARTER LIMITATIONS. A provision in a charter of an insurance company, " that all policies of insurance made by the corporation shall be subscribed by the president, or, in case of his death or absence, by the vice-president, and countersigned and sealed by the secretary of the company :" *Held,* That a contract or agreement to execute a policy of insurance was not within the terms of the charter, and was valid though made in parol by an agent.

4. —— CONTRACT OF INSURANCE: RELATION BACK. The doctrine that an act done at one time may take effect as of a prior time by relation back to the principal contract, is applicable to contracts of insurance; the agreement to insure being the principal act, the payment of the premium and the formal execution of the policy may be concurrent therewith or subsequent thereto.

*Appeal from Scott District Court.*

FRIDAY, OCTOBER 21.

ACTION on a policy of insurance. On the 20th day of March, 1860, the plaintiff, by a committee of its counsel, applied to the agents of defendant to insure a building known as the city hospital. The agents of defendant agreed to insure the building for the sum of one thousand dollars, for one year at one and a half per cent premium, and the committee agreed to pay that rate. But this agreement was with the understanding that defendant's agents were to go and see the building, and if they found it as represented by the committee, the insurance was to date from noon of that day, and they would call at the store of one of the committee and let him know the result. The agents examined the building, and in the evening of the same day informed the committee that they found the building

vacant, but would take the risk as it was, and the committee might consider it insured from that day, and could call and get the policy.

On the night of the same day (March 20th), the building was entirely consumed by fire, but how it originated is not shown. On the morning of the next day (March 21st), both parties being ignorant of the fire, one of the committee called at the office of defendant's agents, signed the written application, and received the policy from the agents' clerk, who acted for them — they not being then in their office. When or how the premium was paid is not shown. The city had not concluded to use the building for small-pox patients, but there was a rumor that it was to be so used, and that if it was, it might possibly be destroyed. The committee had no knowledge of this rumor, nor had the city, nor was the insurance affected in consequence thereof. The building and grounds were purchased for hospital purposes, and had been used therefor when needed, and when not, the building and grounds were rented; but the use of the building as a hospital was never abandoned. There were several judgments of the District Court of Scott county for large amounts, in full force against the city, at the time of the insurance, but there was no mention of the fact made in any way to defendant's agents. In the application for insurance, which is expressly made a warranty by the insured, the question is asked, "is there any incumbrance on the property? If so, what amount?" To which there is the answer, "no." And in the conditions annexed to the policy, there is the following provision: "that any misrepresentation, or concealment of the facts or circumstances which affect the risk, or the omission to make known any fact or rumor material to the risk, shall render the policy void." There was a trial by the court, with findings of fact, and judgment for plaintiff, for

the amount of the policy with interest, from which the defendant appeals.

*George H. Parker* and *H. Grove* for the appellant.

*Daniel L. Shorey* for the appellee.

COLE, J.—The appellant's counsel assign nine distinct matters as errors of the court below, but in their argument they make but four points, and classify the assignment of errors thereunder, to which arrangement we will conform as far as practicable.

I. On the trial, the defendant offered to prove the instructions given by the defendant's agents to their clerk, as to taking risks upon vacant property, and also the defendants' instructions to their agents in regard to risks on small pox hospitals and property termed extra hazardous. This evidence was excluded by the court, and, we think, properly. There was no offer to prove that the action of the clerk or agents was contrary to the ordinary action of persons in those relations, or in excess of their general authority, or that the supposed instructions came to the knowledge of plaintiff. The rule is, as to the public, that the authority of a general agent may be regarded by them as measured by the usual extent of his general employment, and cannot be limited, as to them, by private instructions as to the mode and manner of executing his agency. 2 Pars. Cont., 40–42; Story on Agency, § 73, *et seq.*; *Hatch* v. *Taylor*, 10 N. H., 538; *Barber* v. *Britton & Hall*, 26 Verm., 112; *Lightbody* v. *The North American Insurance Company*, 23 Wend., 18. The defendant also introduced one of their agents, who made the insurance in this case, and asked him, if he had known there were rumors that the building was to be used for small pox patients, current in the neighborhood, would he have taken the risk? This was objected to, and the objec-

*(In the margin:)* 1. PRINCIPAL AND AGENT: general agent.

tion sustained. While there might be some doubt as to the correctness of excluding this question, if the proof had shown that the plaintiff, by its committee, had knowledge of such rumors, and had concealed them from defendant's agents ; yet, since it appears from the evidence and finding of the court, that they had no such knowledge, and therefore made no such concealment, the question is wholly immaterial, and the ruling of the court was therefore without prejudice to appellant. The language of the condition annexed to the policy, that any " omission to make known any fact or rumor material to the risk," must, of course, we think, be construed to mean any such fact or rumor known to the insured. Certainly, an omission to make known that of which the city or its committee had no knowledge, cannot, and ought not to be construed as a warranty that it did not exist.

II. The question and answer in relation to incumbrances, in the application for insurance, became, by the express

2. LIEN : judgment against a city. terms of the policy, a warranty that there were no incumbrances upon the property. That there were several large judgments for money, rendered by the District Court of Scott county, against the plaintiff, in full force, and unsatisfied, was proven and so found by the court. The question, then, is, were those judgments, liens or incumbrances upon the property ? By § 4105 of the Revision, it is provided that " judgments in the Supreme or District Courts of this State, or in the District or Circuit Courts of the United States, if rendered within this State, are liens upon the real estate owned by the defendant, at the time of such rendition, and also upon all he may subsequently acquire before the expiration of the lien, as hereinafter provided." By subsequent sections, the lien is limited to the counties in which the judgments are rendered, or counties in which attested copies are filed in the office of the District Court clerk. Under these sections,

the judgments are incumbrances, unless the property is exempted therefrom by other provisions. By § 3274, it is provided, that "public buildings owned by the State, or any county, city, school district or other civil corporation, and any other public property which is necessary and proper for carrying out the general purpose for which any such corporation is organized, are exempt from execution. The property of a private citizen can in no case be levied upon to pay the debt of a civil corporation." It was found by the court, and is conceded by counsel, that the building, in this case, was necessary and proper for the preservation of the health of the city, and for carrying on the purposes of its government. Our statute has a similar exemption from judicial sale of the homestead of every head of a family, and it was held by this court in the case of *Lamb* v. *Shays*, 14 Iowa, 567, that a judgment did not attach as a lien upon property exempt from execution sale. BALDWIN, Ch. J., delivering the opinion of the court, says : " The lien of a judgment upon lands in this State, being conferred by statute, it can only have such force as is given thereby, and it can only attach, or become effective in the manner, at the time, and upon the conditions and limitations imposed by the statute itself. A lien, without the power to enforce it, carries with it no advantage to the owner thereof. It cannot be enforced as against the homestead, because it is exempt from judicial sale. It is inoperative, and cannot be otherwise, as long as the homestead is used as a home. Construing the two sections together, having been passed at the same time by the legislature, we think that it could not have been designed that the lien should ever attach upon property that was declared exempt from judicial sale." This case is decisive of the question now presented, and fully supports the conclusion of the court below, that the judgments were not

The City of Davenport v. The Peoria Marine and Fire Insurance Co.

incumbrances on the property. See also *Cole* v. *Green*, 21 Ill., 104; *Green* v. *Marks et al.*, 25 Id., 221.

III. In the seventh assignment of error, appellant complains that the court erred, in finding, as a conclusion of law, that the policy was binding from the 20th day of March, it having, in point of fact, as appears from the finding of the court, been executed and delivered on the 21st. The evidence fully sustains the finding of the court below, that an agreement for insurance was made between the parties, by their agents, on the 20th day of March. The policy was executed, delivered and received, in perfect accordance with that agreement, and in ignorance of the fire, on the morning of the next day. The charter of the insurance company (defendant) provides, that " all policies of insurance made by the corporation, shall be subscribed by the president, or, in case of his death or absence, by the vice-president, and countersigned and sealed by the secretary of the company; and all losses arising under any policy so subscribed and sealed, may be adjusted and settled by the board of directors."

It is claimed, by appellant's counsel, that under this clause in the charter, no agreement for insurance can be binding on the company, unless it is in writing, subscribed by the president, and signed and sealed by the secretary; and that, since the agreement in this case was in parol until after the loss, and the plaintiff had no insurable interest at the time the policy was actually signed and delivered, no recovery can be had thereon.

The English rule, that a corporation cannot expressly bind itself, except by deed, unless the act establishing it authorizes it to contract in another mode, has been broken in upon, and indeed entirely overturned, as a general proposition, throughout the United States; and it is here well settled that the acts of a

DECEMBER TERM, 1864. 283

The City of Davenport v. The Peoria Marine and Fire Insurance Co.

corporation, evidenced by vote, written or unwritten, are as completely binding upon it, and are as complete authority to its agents, as the most solemn acts done under the *Arg. 2.* — corporate seal; that it may as well be bound by express promises through its authorized agents, as by deed; and that promises may as well be implied from the acts of its agents, as if it had been an individual. Angell & Ames on Corp., § 237; *Bank of Columbia* v. *Patterson's Administrator*, 7 Cranch, 305; *Fleckner* v. *The United States Bank*, 8 Wheat., 357; *The Bank of United States* v. *Dandridge*, 12 Wheat., 68; *Dunn* v. *The Rector of St. Andrew's Church*, 14 Johns., 118; *The American Insurance Company* v. *Oakley*, 9 Paige, 496; *Overseers of North Whitehall* v. *Overseers of South Whitehall*, 3 Serg. & Rawle, 117; *Hamilton* v. *Lycoming Insurance Company*, 5 Barr, 344; *Legrand* v. *Hampden Sydney College*, 5 Mumf., 324; *Union Bank of Maryland* v. *Ridgely*, 1 Harris & Gill, 413; *Hayden* v. *Middlesex Turnpike Corporation*, 10 Mass., 401; *White* v. *The Westport Cotton Manufacturing Company*, 1 Pick., 215; *Bulkely et al.* v. *The Derby Fishing Company*, 2 Conn., 256; *Garvey* v. *Colcock*, 1 Nott & McCord, 231; *Petrie* v. *Wright*, 6 Smede & Marsh, 647; *Baptist Church* v. *Mulford*, 3 Halst., 182; *Abbott* v. *Hermon*, 7 Greenl., 118; *Waller* v. *The Bank of Kentucky*, 3 J. J. Marsh., 201; *Lee* v. *The Trustees of Flemingsburg*, 7 Dana, 28; *Bunscombe Turnpike Co.* v. *McCarson*, 1 Dev. & Bat., 310; *Bates & Hines* v. *Bank of Ala.*, 2 Alabama, 452; *Eastman* v. *Coos Bank*, 1 N. H., 26; *Sheldon* v. *Fairfax*, 21 Verm., 102; *San Antonio* v. *Lewis*, 9 Texas, 69; *Palm's Adm.* v. *Medina Insurance Company*, 20 Ohio, 537, and very many other cases.

It is clear then, that the defendant, as a corporation, had the power, by virtue of its existence, to bind itself ex-*Arg. 3.* — pressly, in writing or by parol, through its author-*Charter.* ized agents in any matter within the scope of the object, purpose, or business for which it was created,

unless by the act of its incorporation it was expressly limited therein. The only limitation to which our attention has been called, or which has any bearing on the question made in this case, is that which requires " *all policies of insurance* made by the corporation," to be signed by the president, and countersigned and sealed by the secretary. The limitation then, only extends to "policies of insurance," and, therefore, any other contract may be made in writing or by parol, through its agents, as with other corporations. The contract, or agreement to execute a policy of insurance is not within the limitations, and such a contract may be made in the ordinary way, through its agents, and will bind the corporation. It may be said that such a construction will place it in the power of an agent to bind the corporation to execute a policy in the manner provided by its charter; and thereby an agent may do indirectly what he could not do directly. This is true; and it results from the fact that the corporation possesses general powers for the accomplishment of the purposes of its creation, while the limitation specified by the charter extends to the direct act, and that alone. It would have been competent for the legislature to have imposed a further limitation, so as to have prohibited the indirect act also, except in the manner specified, or any other acts; but since the legislature failed thus to impose further restrictions, it is not competent for the courts to supply them. Upon principle, then, the agents of defendant had the power to bind the corporation by their agreement to execute a policy of insurance upon the property in question, and that it should commence to run from the time agreed upon. And the execution and delivery of the policy, on the next morning, in accordance with the agreement as made, and in the manner provided by the charter, was not only legal and binding in itself, but was an act obligatory on the defendant to perform. We have discussed this

branch of the case so far, upon principle only, without reference to precedent or authority. Let us now look at it in another view, and see if the same conclusion may be sustained by precedent.

In the case of *Kohne* v. *The Insurance Company of North America*, 1 Wash. C. C., 93, the agent applied to the president of the insurance company to effect an insurance on goods on board a ship, and settled with him the terms of the insurance, but left the office before the policy was filled up. It was soon after filled up and executed, and about the same time, the company received intelligence of the capture of the vessel and loss, which was not known to either party when the agreement was made and the policy executed. On a subsequent day, the agent called to pay the premium and receive the policy, but the company refused to deliver it, objecting that the agreement was inchoate, and having heard of the loss before the delivery of the policy, the company had a right to retract. But Mr. Justice WASHINGTON held that since there was no unfairness nor knowledge of the loss when the terms of insurance were settled, the objection was entitled to no weight, and the contract perfect and binding. In the case, *Lightbody* v. *The North American Insurance Company*, 23 Wend., 18, the plaintiff, through his agent, made a contract for insurance of buildings in Utica, with the defendant's agent in Troy, late in the evening of the 30th day of March, 1837, and paid the premium and took a receipt. About two o'clock in the morning of the next day, the buildings were consumed by fire. The policy was not made or delivered till the 21st day of April following, and was delivered by the agent after the plaintiff had called upon defendant for payment of the loss, which was refused, denying the authority of their agent to make the contract of insurance, and notifying him that the agent's authority, as their agent, had been revoked. The court, per BRONSON, J.,

held that the policy took effect by relation, from the day
of its date, which was on the day the premium was paid
and the contract concluded; that it was the manifest intent
of the parties, that the contract should operate from the
day of its date, so as to give the plaintiff the same legal
remedy which he would have had if the policy had in
fact been delivered on that day; and the law will give
effect to that intention. The plaintiff had made a valid
contract with the defendants, and was entitled to the
usual evidence of that contract—a policy of insurance.
He could have maintained an action on the case for a
refusal to deliver the policy, in which he would have recov-
ered damages to the full amount of his loss. But if his
remedy at law was questionable, he had a perfect equita-
ble right to the delivery of the usual policy, which he
might have enforced in the proper forum.

The plaintiff recovered the full amount of his policy
and interest. In the case of *Perkins* v. *The Washington
Insurance Company*, 4 Cow., 645, the plaintiff, on the
5th day of January, 1820, applied to defendant's agent in
Savannah, Georgia, the defendant being a corporation in
New York, to insure a stock of goods for five thousand
dollars, which the agent agreed to do for a premium of
two and a half per cent. The plaintiff paid the premium
accordingly, and the fee for survey and policy, and took
the agent's receipt therefor. On the morning of the 11th
day of January, an extensive fire broke out in Savannah,
and consumed the plaintiff's goods. The plaintiff gave
notice to the agent of the loss, and offered the usual pre-
liminary proofs, and demanded a policy of insurance; but
the agent stated that he had not forwarded the premium to
the company, and had not received a policy, and intimated
that the company would not feel bound by what had been
done. The proper notice, with the usual proofs, were, in
May, 1820, given to the defendant in New York; but

defendant refused to execute a policy, although plaintiff tendered the amount of premium. The plaintiff thereupon brought his suit in chancery, to recover for his loss, and set up in substance the foregoing facts. The defendant admitted the facts as stated, but denied the agent's authority to contract for insurance, but averred that he only had authority to make surveys, receive probable premiums, and transmit them to defendant to prevent unnecessary delay. The court held that the defendant was bound by the acts of the agent, and should make good to plaintiff his loss. In the case of the *Franklin Fire Insurance Company of Philadelphia* v. *Hewitt, Allison & Co.*, 3 B. Monr., 231, the policy of insurance did not cover the property intended and applied to have insured, but was not noticed till after the loss. The court held that plaintiffs were entitled to recover for the loss of the property as specified to the agent in the application to him for the insurance. And the court say, "if then the company had delivered no policy as according to the import of their agent's acts, they were bound to do, the insured would have remedy against them in a court of equity, perhaps for coercing the execution of a policy before a loss, and certainly for enforcing the indemnity implied in the insurance upon the occurrence of a loss by fire, within the period fixed by the terms of the agreement."

In *Carpenter* v. *Mutual Safety Insurance Company*, 4 Sandf. Ch. Rep., 408, the court held that an agreement to insure, evidenced by the receipt for the premium, may be specifically enforced, and that, if a loss happened, payment may be compelled in equity. Indeed, it is laid down as a general rule, by Angell on Fire and Life Insurance, §§ 33 and 34, that in commercial towns, actions on mere agreements to insure, whether against fire or perils of the sea, are not uncommon; and they are always sustained whenever it appears that the terms of the

agreement have been fully settled by the concurrent assent of the parties, so that nothing remains to be done but to deliver the policy. The contract is executory in the first instance, and completed when the policy is drawn up. Mere receipts for premiums, are very common in the city of New York, and much insurance is effected, in the first instance, by means of such receipts. When the negotiation for insurance is so far completed that nothing remains to be done but to deliver the policy corresponding with the terms and date of the application, should a loss occur before the execution of a policy, a court of equity would relieve the assured; and upon a bill properly framed, instead of confining itself to a specific execution of the agreement to insure, would probably decree the payment of the loss. There are very many other cases fully sustaining the doctrine, that an agreement by the agent to insure, will be specifically enforced against the insurance company for which he acts, even where no policy has been executed. *Hamilton* v. *Lycoming Insurance Company*, 5 Barr, 339; *Andrews* v. *The Essex Fire and Marine Insurance Company*, 3 Mason's C. C. Rep., 6; *McCullough* v. *Eagle Insurance Company*, 1 Pick., 278; *Palm, Adm'r*, v. *Medina Insurance Company*, 20 Ohio, 529; *Tayloe* v. *Merchant's Fire Insurance Company of Baltimore*, 9 Howard (U. S.), 390.

IV. The doctrine that an act done at one time may take effect as of a prior time, by *relation back*, is well exempli-

4. —— Con- fied in its application to insurance policies, in the
tract of
insurance: case of *Lightbody* v. *The North American Insur-*
relation
back. *ance Company, supra*, and fully sustains the view

of the court below in this case. The fact that in that case, the premium was paid and receipt taken, does not vary the doctrine, which is, that where there are divers acts concurrent to make a conveyance, estate, or *other thing*, the original act shall be preferred; and to this, the other act shall have relation. The contract or agreement to insure is the

principal act, and whether the premium is paid or waived, is an immaterial circumstance, and the formal execution of the policy may be a concurrent or subsequent act, and if subsequent and made as of the date of the principal act, will have relation back to the time of doing that principal act. This doctrine is an old one, and has been repeatedly recognized.

In *Jackson ex dem. Loan Officers of Rensselaer* v. *Bull*, 1 Johns. Cases, 81, it was held, that a deed executed in pursuance of a previous contract for the same premises, is good by relation from the time of making the contract, so as to render valid every intermediate sale or disposition of the land by the grantees.

In *Jackson ex dem. June* v. *Raymond*, 1 Johns. Cases, 85, the same doctrine is held in a very similar case. In *Heath* v. *Ross*, 12 Johns., 140, a patent for land, dated the fourth of December, but which did not pass the great seal until the twenty-eighth of the same month, was held to relate back, as between the parties, so as to vest the title in the patentee from the *date*, and enable him to maintain trover for timber cut and carried away between those dates.

In *Jackson, ex dem. Noah*, v. *Dickinson et al.*, 15 Johns., 309, the sheriff made a sale on the first day of March, but did not deliver the deed until the nineteenth of the same month. On the tenth of that month a mortgagee of the same land filed a bill of foreclosure, without making the purchaser at the sheriff's sale, a party. It was held that the deed related back to the time of the sale, and that the purchaser was not precluded from contesting the validity of the mortgage in an action of ejectment at law, he not being a party to the bill in equity, as his title was acquired previous to the notice of *lis pendens* in chancery, though not consummated till afterwards. The court say "the subsequent delivery of the deed being mere matter of form must have relation back to the time of purchase

at the sheriff's sale." This doctrine is a fiction of law, resorted to for the promotion of justice and the lawful intention of parties, by giving effect to instruments, which without it, would be invalid, but it is never applied to the prejudice of third persons, not parties or privies. See, also, *Doe* v. *Howland*, 8 Cow., 277, and argument of Mr. Jay; Com. Dig., Bargain and Sale; B; 9 Viner's Abr., tit., Relation, 290; *Jackson, ex dem., &c.*, v. *Ramsay*, 3 Cowen, 75; *Klock* v. *Cronkhite*, 1 Hill, 107; *Jackson* v. *Bard*, 4 Johns., 230, &c. In this case the action is based upon a policy of insurance, duly executed by the defendant, in the manner provided by its charter, and dated prior to the loss. The defendant seeks to avoid liability on this policy, by showing by parol, that the policy was not in fact executed or delivered until the day *after* its date. The plaintiff then shows by parol that such ante-date was not the result of accident or mistake, but was done intentionally and in pursuance of a previous contract between the parties. This parol testimony was clearly competent, and shows, beyond controversy, that there was no fraud, accident or mistake in the transaction, but that both parties did exactly what they intended to do, and have put in writing, in a legal binding form, the mutual contract between them, and the obligations of the respective parties. Such a contract, thus fairly entered into, both good morals and good law require shall be enforced, and the losses, if any, must fall on that party, which for a valuable consideration voluntarily assumed the possible burdens of them.        Affirmed.