W. A. M. Schmith, Appellant, v. Union Mutual Casualty Company, Appellee.

No. 41775.

April 4, 1933.

Rehearing Denied October 28, 1933.

Stipp, Perry, Bannister & Starzinger and Edward Robinson, for appellant.

Harold S. Thomas, for appellee.

ANDERSON, J.—This is an action brought upon a policy of insurance providing indemnity for loss of time by sickness. The facts are without dispute, having been stipulated in the record.

The defendant is a mutual insurance company organized under the laws of the state of Iowa, with its principal office in Des Moines.

The policy in controversy is dated October 30, 1930, and the parts material to the issues before us are as follows:

"In consideration of the representations and agreements contained in the application herefor (a copy of which is endorsed hereon and made a part hereof) the payment of nine dollars ($9.00) being the premium in advance for the first quarterly period, from 12 o'clock noon, Central Standard Time, of the 30th day of October, 1930, and of the further payment of nine dollars ($9.00) quarterly thereafter, does hereby insure W. A. M. Schmith, by occupation a Secretary-Treasurer of Lumber Company for periods to correspond to those above set forth, against—the insuring clause."

"The effects resulting directly and exclusively of all other causes from disability through sickness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for thirty days from its date, hereinafter referred to as 'such sickness' subject to the provisions and limitations herein."

"The privileges, conditions and limitations as hereinafter set forth are hereby made a part of this policy as fully as if recited at length over the signature hereto affixed."

"The company guarantees first indemnity for loss of time— House confinement—$200.00 per month for three years."

"During which the Insured shall suffer from any bodily sickness or disease, not hereinafter excepted which is contracted and begins after this policy has been in force thirty days, directly preceding, for the number of consecutive days not exceeding three years, that the Insured, solely by reason of 'such sickness', is necessarily entirely and continuously confined within the house and therein personally treated by a legally qualified physician at least once every seven days, and wholly and continuously disabled and pre-

vented from performing any and every duty pertaining to his business or occupation."

"This policy covers loss caused by every sickness or disease contracted subsequent to its issue and beginning while it is in force."

"No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon."

· The defendant admits the execution and delivery to the plaintiff of the foregoing policy, but denies that it was or is a valid existing contract between the plaintiff and defendant, and especially denies that there was any valid or existing contract of insurance between the plaintiff and defendant on the 24th day of December, 1930, when the plaintiff became sick and incapacitated; and denies that the defendant's sickness was contracted or began during the life of said policy and after it had been maintained in continuous force for thirty days from its effective date.

To the end that the issues and controversies here presented may be clearly understood, it is necessary that we detail the facts and circumstances pertaining to the issuance of the policy of insurance and subsequent events.

Under date of September 29, 1930, the plaintiff mailed to the defendant company a request or application for an insurance policy, apparently, upon a blank or form obtained from the company, and which was as follows:

"Wm. Schulz, Jr., President, Union Mutual Casualty Company, Des Moines, Iowa.

"Dear Sir: Send me one of your non-cancellable income policies. I'll look it over and tell you in ten days whether or not I want it. Without obligating myself in any way, I submit the following for your information in sending the policy: My age 35 years. Height 5' 10" Weight 150 lbs. Full name of beneficiary, Mrs. W. C. Schmith. Relationship Mother, address 291 Sumner—Galesburg, Ill.

"My habits are correct and temperate. I am in good health and free from any infirmity. I understand if I decide to accept the policy that the maximum contingent premium liability will be an amount equal to the premium of $4.00, and that my combined disability insurance does not exceed my income.

"Name W. A. M. Schmith Address Conroe, Texas, c-o Coulson Bradley Company.

"Describe occupation Office and travel Secy-Treas. of Coulson Bradley Co.

"If your income exceeds $200.00 monthly you are eligible for the policy with double the benefits described. A $10,000.00 principal sum and $200.00 monthly indemnity policy will be prepared for your consideration, for premium of $8.00 the quarter, if checked here. X

"Copy of application attached to policy No. 178216

"Date October 30, 1930

"C. G. Schulz V. Pres."

The foregoing application was received by the defendant company on October 3, 1930. On October 30th the defendant company sent a letter to the plaintiff, inclosing therewith the policy in suit, which letter was as follows:

"Mr. W. A. M. Schmith,

"Conroe, Tex.

"Dear Mr. Schmith: Knowing that your time is valuable—and believing that you will desire full facts regarding this remarkable policy without waste of your time, I have had one of the policies prepared for your inspection and consideration, on the basis of your original application for insurance to this Company; all you will need to do to place the protection in full force and effect will be to retain the policy, complete, sign and return the enclosed 'Supplement to Original Application' and return with your remittance. No examination—no costly interviews with agents—no red tape; in the privacy of your own office or home—easily and conveniently— you can take this further step to guarantee for yourself and family that your income will not be cut off in case of sudden illness disability.

"A dash of your pen will secure this protection for you for all time—use the handy self-addressed envelope in returning the Supplement to Original Application with your remittance for the premium of $9.00.

"W. M. Schulz, President."

The supplement to original application inclosed simply acknowledged that the representations contained in the first application for insurance as shown by the copy thereof indorsed on the policy No. 178216 were true and correct, and ended with the following clause:

"Send this completed form with remittance; if the policy is not acceptable, please return within ten days."

On November 26, 1930, the defendant company sent to the plaintiff the following letter:

"Mr. W. A. M. Schmith,

"Conroe, Tex.

"Dear Mr. Schmith: Here's a stamped return envelope. Kindly do either of these two things: Send remittance for $9.00 in pay-ment of premium for the Ideal Income Health Policy mailed you some time ago; or, if you have concluded not to accept the policy, please so indicate in a marginal notation to this letter—and we should be genuinely grateful to you if you would tell us just why it failed to please you. I'll highly appreciate the courtesy of your prompt reply.

"C. G. Schulz, Secretary.

"P. S. Full three months' health protection according to the provisions of the policy is assured you for the $9.00 premium if you mail payment now!—the payment to be applied to a quarter yearly period beginning on the date of receipt of your remittance."

On December 3, 1930, the plaintiff wrote on the face of the foregoing quoted letter the following:

"I have been out of town on business for over a month. Enclos-ing check for $9.00. Policy is dated Oct. 30th. Will this be changed to date you receive check? or when? Please write me so my record will be complete.

"W. A. M. Schmith."

And on the same date mailed the above-quoted letter with the foregoing notation thereon together with the completed supplement to application and a check for $9 to the defendant company, and these were received by the defendant company on December 6, 1930.

No acknowledgment of the receipt of plaintiff's check and the executed supplement to application was made by the defendant company, although it retained the check until January 15, 1931. After it had received notice of the illness of the insured, the defendant returned the check to the plaintiff by registered letter, expressing regret that the company could not be of any service in connection with any claim for disability, for the reason that the policy had not been in benefit and "can not be placed in force until we are able to complete our investigations—and we are still unable to entirely

complete our files. Under these circumstances we have no alternative than to continue to hold your premium remittance in our suspense file as we can not accept it until our records are complete and the policy could not be in benefit until acceptance of your risk is made by the Company and our premium receipt mailed to you." Notwithstanding the letter, a portion of which we have just quoted, the check for the $9.00 premium was returned to the defendant with the above letter.

 The insured was taken ill December 24, 1930, and the defendant company contends that the policy did not go into effect until December 6th, the date upon which it received the check for the premium, and consequently had not been in force thirty days prior to the disability of the insured. The plaintiff insists that the policy was in force and effect from its date, October 30, 1930, and that, if such was not the fact, the clause in the policy relating to the thirty-day limitation is ambiguous, repugnant, and uncertain, and should not be construed to limit the company's liability under the policy.

The case was submitted to the court, a jury being waived, upon a stipulated record and exhibits incorporating the foregoing facts, and the court entered an order and judgment dismissing plaintiff's petition, from which order this appeal is prosecuted.

The errors relied upon for reversal are:

(1) "The facts, as stipulated, establish, as a matter of law, that a contract of insurance existed on December 24, 1930."

(2) "The facts, as stipulated, establish, as a matter of law, that the policy of insurance was effective from its date, October 30, 1930."

If the policy was effective from its date, October 30, 1930, as contended by the appellant, then it had been in force more than thirty days when the plaintiff's sickness commenced, December 24, 1930, and the appellee company became liable, under the terms of the policy, for the payment of the stipulated benefits thereunder. If, however, the policy did not become effective until December 3d or 6th as contended by the appellee, then there would be no liability thereunder, unless it be held that the thirty-day limitation clause was ineffective by reason of ambiguity or inconsistent provisions in the policy.

The policy was issued and bears date October 30, 1930. It was

issued pursuant to an application mailed to and received by the appellee company, which was dated September 29, 1930, and was upon a blank form apparently furnished by the company and containing the following:

"Send me one of your non-cancellable income policies. I'll look it over and tell you in ten days whether or not I want it."

Accompanying the policy, which was mailed to the plaintiff was a letter from the company, which contained the following statement:

"I have had one of the policies prepared for your inspection and consideration, on the basis of your original application for insurance in this company; all you need to do to place the protection in full force and effect will be to retain the policy, complete, sign and return the enclosed Supplement to Original Application and return with your remittance."

The policy with the quoted letter was received at the office of the plaintiff in his absence and there retained; and on December 3, 1930, the plaintiff forwarded the completed supplement to application and his check for $9 to the defendant company, and this check was retained by the company until January 15, 1931, or a few days after the company had received notice of the illness of the insured.

It is a quite generally recognized rule that the tender of a bank check in payment of a debt is good, where it is refused, not on the ground that it is not lawful money, but upon some other ground which is not well taken. Kollitz v. Equitable Mut. Fire Ins. Co., 92 Minn. 234, 99 N. W. 892, 893.

The check sent to the defendant company by the plaintiff in payment of the premium was, as we have said, retained by the company from December 6, 1930, until January 15, 1931, and was then returned to the plaintiff, not because it was a check, but because a liability under the policy had occurred. There does not appear any explanation as to why the defendant company retained this check. The company offers as an excuse or reason, in one of its letters, that it had not yet completed its investigation of the plaintiff's application, but, as no such investigation was contemplated in the application for the policy or in the policy itself, the defendant company must be held to have converted the check, and that the premium due

the company for the first three months of insurance was thereby paid.

The question now presents itself, When did the policy in suit go into effect? Was it on the date the policy was issued and delivered, or was it on the date that the premium was paid? It must be noticed that the policy itself contains no provision to the effect that it will not be in force and effect until the premium therein provided for is actually paid. The policy was issued, as it recites, "in consideration of the representations and agreements contained in the application therefor, and the payment of $9.00 being the premium in advance for the first quarterly period, from 12 o'clock noon, * * * of the 30th day of October, 1930".

It has been held that, even where a policy contained a provision to the effect that it should be held suspended if the premium was not paid within ten days after the delivery of the policy, the fact that the policy was issued and delivered without a payment of the premium was a waiver by the issuing company of the condition as to payment, and that the company must be held to have extended credit therefor.

In the Kollitz v. Equitable case, supra, the Supreme Court of Minnesota said:

"The policy itself must control, and, it having been delivered to plaintiff without a pre-payment of the premium, defendant must be taken * * * to have extended credit for such payment, and the policy was, notwithstanding the fact that the premium had not been paid, in full force at the time of the fire."

It has also been held that the premium not having been paid at the time of the loss is no defense, where there is no provision in the policy that it shall not take effect until the premium is paid. Cahill v. Royal Ins. Co., 94 Conn. 118, 108 A. 544.

In the absence of express provision that insurance policies shall not be in force until premiums are paid, such a provision cannot be implied. Michelson v. Franklin Fire Ins. Co., 252 Mass. 336, 147 N. E. 851.

In a policy containing a provision that it should take effect on the day of approval "providing the premium has been paid and not otherwise," it was held that, when the premium was paid, it related back to the date of the policy, and that, when the company proceeded to make out and sign the policy, it ratified the applica-

tion, and its consent was complete. Keim v. Home Mut. F. & M. Ins. Co., 42 Mo. 38, 97 Am. Dec. 291; Pino v. Merchants' Mut. Ins. Co., 19 La. Ann. 214, 92 Am. Dec. 529.

Swing v. Marion Pulp Co., 47 Ind. App. 199, 93 N. E. 1004, 1005, was an action brought by a trustee for the creditors of a mutual insurance company located in Cincinnati, Ohio, to recover an assessment due the company as a premium upon insurance policies. The defense was made that the policies were not accepted by the defendant insured. It appears from the facts stated in the opinion that an application for the insurance policies was delivered to the company and that policies of insurance were thereafter issued thereon and mailed to the insured in Marion, Ind.; that accompanying each of said policies was a letter of the company requesting the insured to return the policies on or before the 25th day of the month in case the terms on which they were sent were not satisfactory. The policies were not so returned. The court in passing upon this situation uses the following language:

"Appellant omits to take into consideration the fact that the contracts were sent to appellee conditionally; that is to say, it had the privilege of returning them to the company within a specified time in case the terms on which they were sent were not satisfactory, and thus end the negotiations. While the company may have unconditionally accepted appellee's application, it is certain that the contracts were not completed until the latter's acceptance. Appellee, at Marion, Indiana, received the contracts and retained them beyond the time allowed for their return. Its failure to take advantage of its option in this respect was in effect an act of acceptance, and the last act necessary to complete the contracts."

The date of issue of a policy refers to the date the policy bears and not to the time of the actual execution or delivery of the policy. Mut. Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102.

In the case of City of Davenport v. Peoria M. & F. Ins. Co., 17 Iowa 276, the question now under consideration was before the court, and the court, speaking through Justice Cole, said:

"The doctrine that an act done at one time may take effect as of a prior time, by relation back, is well exemplified in its application to insurance policies. * * * the doctrine, which is, that where there are divers acts concurrent to make a conveyance, estate,

or *other thing,* the original act shall be preferred; and to this, the other act shall have relation. The contract or agreement to insure is the principal act, and whether the premium is paid or waived, is an immaterial circumstance. \* \* \* This doctrine is an old one, and has been repeatedly recognized."

In Hoover v. Bankers Life Assn., 155 Iowa 322, 136 N. W. 117, it was held that there is a presumption of law that a certificate of life insurance was delivered on the day of its date, unless overcome by a showing otherwise, and that a provision in the application that the certificate should not become effective until the premium was paid may be waived; and that delivery of certificate without such payment presumes that credit has been extended or prepayment waived. And the case further holds that a contract of insurance will be construed most favorably to the member or his beneficiary.

Under the rules laid down in the foregoing cited cases, and many others that we might refer to by extending this opinion to an unnecessary length, we are constrained to hold that the provision in the application for the insurance policy involved in the case at bar, permitting an examination of the policy for a ten-day period, was for the sole benefit of the insured, and that, by retaining the policy beyond that period without advising the company of its rejection, the plaintiff must be held to have accepted the policy; and, by the company's acceptance and retention of the check for the premium, it must be held that the payment of the premium by the insured on December 3, 1930, related back, and that the policy, as a matter of law, became effective from its date, October 30, 1930. The correspondence between the insured and the company following the issuance, delivery, and retention of the policy could not and did not affect or change the terms and conditions of the policy.

The thirty-day limitation contained in the policy, and which the appellee insists is a complete defense to the present action, will next have our attention.

It will be noticed by reference to the policy that it "does hereby insure W. A. M. Schmith \* \* \* against effects resulting \* \* \* through sickness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for *thirty days from its date."* (Italics are ours.) Following the above-quoted provision, the policy provides that the company will pay $200 per month during the time which the insured shall suffer from any bodily sickness or disease "which is contracted and begins after

this policy has been in force thirty days." In another part of the policy, and entirely separated from above, appears the following provision:

"This policy covers loss caused by every sickness or disease contracted *subsequent to its issue and beginning while it is in force.*" (Italics are ours.)

The contract in respect to this attempted thirty-day limitation is ambiguous, inconsistent, repugnant, and uncertain in its provisions. The first quoted provisions cover disability through sickness contracted or beginning *thirty days after the date of the policy, or* after the policy has been maintained in continuous force for thirty days from its date, and the last provision quoted provides that every sickness or disease contracted *"subsequent to its issue"* and beginning while it is in force is covered. It is impossible to reconcile these provisions of this policy, and in such a circumstance the contract must be most strongly construed against the company issuing it.

In Drucker v. Western Indemnity Company, 204 Mo. App. 516, 223 S. W. 989, 991, the policy contract provided that it did not cover any illness contracted within fifteen days from the date of issue, and other provisions similar to the policy now before us, and the court held that the limitation clause was repugnant to other provisions of the policy. In the policy there under consideration, as in the policy here involved, there was a paragraph to the effect that the policy covered every loss due to sickness or disease contracted subsequent to its issue and beginning while it is in force. In another part of that policy, as in the one before us, appeared the provision that it covered every loss for sickness or disease contracted after the policy had been in force fifteen days. And the Supreme Court of Missouri, in passing upon the question, stated:

"Furthermore, it is an established rule of construction that, when the language of an insurance contract is capable of two interpretations, the one must be adopted which is most favorable to the assured, because the language used is that of the insurer. * * * Likewise, when repugnant or inconsistent statements or clauses appear in a policy, that statement or clause will be given effect which is most favorable to the assured."

The same rule was followed by the Supreme Court of Tennessee in the case of Bean v. Ætna Insurance Company, 111 Tenn. 186, 78 S. W. 104, and the court there held that a policy containing simi-

lar provisions to the one we have under consideration shows a clear repugnancy, which no sort of construction can reconcile.

The court had a like question under consideration in the case of Johnson v. Am. Life Insurance Co., 212 Mo. App. 290, 249 S. W. 115, 120, and in its determination used the following language:

"In other words, the insurance contract herein, * * * contains various provisions giving different times as to when the insurance was to go into effect, and therefore there is a conflict and an ambiguity in that regard. It is well settled that, where such exists, that construction which is most favorable to insured will be adopted."

And the court further held that the company, having such different and inconsistent provisions in its contract, should not be permitted to construe and rely on the provisions most favorable to it.

The Missouri court in the last-cited case cites with approval our own case of Goodwin v. Provident Sav. Life. Assur. Assn., 97 Iowa 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411, in which this court held that, where the terms of a policy will bear two interpretations, that one must be adopted which sustains the claim for indemnity.

In the case of Meyer v. Fidelity & Cas. Co., 96 Iowa 378, 65 N. W. 328, 330, 59 Am. St. Rep. 374, this court, speaking through Justice Deemer, said:

"The language used is made up of words framed by the company or its legal advisers in an attempt to limit as narrowly as possible the scope of the insurance; and it is a universal, as well as a fair, rule, adopted by the courts everywhere, to construe the terms of the policy most strongly against the assurer and to resolve every doubt or ambiguity in favor of the assured and against the assurer."

It necessarily follows from the established rules of construction of the provisions of insurance policies as indicated by the preceding discussion, and cited authorities, that the provisions of the policy under consideration in the case at bar must be held to be repugnant; and, adopting the universal rule of construction in such cases, we hold that the thirty-day limitation clause in this policy is ineffective and does not control or limit the liability of the company. It follows from what we have said in the foregoing opinion

that the trial court erred in dismissing plaintiff's petition, and the case must be and is reversed.—Reversed.

All the Justices concur.