JESSE W. BENEDICT v. THE OCEAN INSURANCE COMPANY.

Where there is any repugnancy between the printed and written conditions of a policy of insurance, the written conditions must prevail.

Where, at the time of insurance, the insurers write across the policy, "privilege for $4,500 additional insurance," such indorsement authorizes the insured to effect additional insurance upon the same property to that amount, without notifying the insurers thereof.

Such indorsement is a waiver of notice of additional insurance within the amount specified, although the printed part of the policy require notice to be given of any additional insurance.

Describing the building as a five story brick building, making no mention of a cellar under it, is not a misdescription, though there be a cellar under the building.

APPEAL from judgment of New York Common Pleas. The action was brought by the plaintiff, as assignee of August Janson, to recover the loss by fire of certain property insured by the defendants.

The policy was dated the 13th November, 1857, and for $70 premium insured Janson against loss or damage by fire to $2,000, $1,800 on his stock as a cabinet maker, and $200 on tools and benches, " contained in the five story brick building, with tin roof, in the rear of 195 and 197 Christie street, New York."

It appeared on the trial before the Hon. CHARLES P. DALY, in the New York Common Pleas, in December, 1858, that on the night of the 21st January, 1858, the property insured was totally destroyed by fire, and that the loss was $9,170.84, of which $7,612.84 was on the stock, and $1,558 on the tools.

The policy contained this clause specially written upon the face of it, at the time it was issued: " Privilege for $4,500 additional insurance." In the same instrument there was a printed provision that in case the insured had already made any other insurance on the property insured, not notified to the defendants, and mentioned in or indorsed on the policy, then this insurance to be void; and if the insured should thereafter make any other insurance, and should not with diligence give notice thereof, and have the same indorsed on

the policy, or otherwise acknowledged by the defendants in writing, the policy was to be void.

Janson procured additional insurance upon the property to the amount of $4,500, viz., $2,000 in the Hamilton Fire Insurance Company; $2,000 in the New York and Erie Insurance Company; and $500 in the Tradesmen's Insurance Company.

It appeared, also, that the building containing the property insured was five stories high, with a cellar underneath; and that the surveyor of the defendants went through the building making a survey of the same, prior to the policy being issued, and thereupon the defendants furnished the policy.

The defendants' counsel offered to show that insurance had been effected by Janson on the property with the Hamilton and Tradesmen's Insurance Companies to the amount of $2,500, without notice to the defendants of such insurances, which proof was rejected, and the defendants excepted.

The plaintiff, after proving the assignment to him by Janson, on the 8th November, 1858, for the benefit of creditors, of his claim for damages, rested, whereupon the defendants' counsel moved for a nonsuit on the ground that the building containing the subject matter is not the building mentioned in the policy; that the premises destroyed are shown to have been a building five stories high, with a cellar, in which was a part of the property destroyed.

The nonsuit was refused, and the defendants excepted.

Janson then, after testifying to the survey of the premises by the company's surveyor, continued: "I paid the premium to Mr. Wilcox, who represented that he was the agent of the company; he said he would give the company a description of the building, and tell me what they would charge; he first came to me to insure; he gave me the policy after the surveyor examined the building; I paid him $70; first $50, and then $20, when he left the policy."

The defendants' counsel objected, in time, to the acts and declarations of Wilcox; which objection was overruled, and the defendants' counsel excepted.

The jury found a verdict for the plaintiff.

On appeal to the General Term of the Common Pleas the judgment entered on the verdict was affirmed.    The defendants appeal to this court.

*Andrew Boardman*, for the plaintiff.

*J. H. Reynolds*, for the defendants.

WRIGHT, J.    The only question in the case of any importance relates to the construction and meaning of the policy. In the written part of it, and following a statement of the subject and amount of insurance, is this clause: "Privilege for $4,500 additional insurance."    One of the printed clauses is as follows: "If said assured or his assigns shall hereafter make any other insurance upon the same property, and shall not with all reasonable diligence give notice to this corporation, and have the same indorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect."    The plaintiff effected additional insurance in other companies to the exact amount of the privilege granted, and, as it was offered to be proved, without giving notice thereof to the defendants.

The defendants claim now that the omission to give notice of the other insurances rendered the policy issued by them void, and it need not be denied that if the provision requiring notice to be given, stood alone and unaffected by any other, that would be the effect.    This is not, however, all that is contained in the policy on the subject.    Effect must be given to the words, "privilege for $4,500 additional insurance," written in it; and if there is any repugnancy in the clauses, in construing the instrument, the written should prevail over that which is printed.    What then was intended and meant by this writing on the face of the policy?    The defendants insist that it was merely a consent that further insurance to the amount stated might be made, but notice of it must be given as the policy required; whilst the plaintiff's position is, that the "privilege" granted by the defendants to the insured "for $4,500 additional insurance," was in effect a waiver of the provision for notice to them.    I think the

latter is the proper construction. It required no permission
or consent of the insurers for the insured to increase his
insurance. The right is not derived from the insurer. He
had the right without their consent to make other insurance,
but by the terms of the policy he must give notice of such
further insurance; if, therefore, the "privilege" granted be
not construed as a waiver of notice of such further insurance,
it is utterly without force or meaning. This was not the
intention. The contracting parties designed that the written
stipulation should answer a purpose; and this purpose, I think,
was to sanction in advance any insurance Janson might
obtain, not exceeding $4,500. The object of the printed pro-
vision of the policy requiring notice, is to give the company
such information as to enable it to judge whether the insurer
is obtaining excessive insurance, in order that it may, in that
case, avail itself of its right to give notice to the assured of its
intention to terminate the insurance. Additional insurance
is a positive benefit to the insurers, unless it be increased to
such an extent as to furnish a motive to defraud on the part
of the assured; and the reason for notice of the amount is to
enable the insurer to judge whether such amount is increased
beyond that point at which he deems it unsafe to remain the
insurer. When the defendants wrote on the face of the
instrument the words: "Privilege for $4,500 additional
insurance," it was equivalent to a declaration that they
deemed that amount of additional insurance reasonable, and
that it was not necessary to inform the insurers of insurance
to that amount, as they would not deem it a reason for ter-
minating the insurance, or for any action or objection. By
giving the written phrase this meaning, no possible injury
can accrue to the defendants. If another object of requiring
notice, besides that stated, be to enable the company to know
who was liable to contribute with them, that information is
secured in case of loss by another provision of the policy.
The ninth condition provides that in case of loss, the insured
shall deliver to the company a particular statement, among
other things showing "whether any and what other insurance
has been made on the same property, giving a copy of the

written portion of the policy of each company, and what was the whole cash value of the subject insured."

I cannot but regard this as an attempt on the part of the defendants to escape responsibility, by a construction of their contract which would render it a mere deception. That which they characterized as a "privilege" they seek to convert into a snare. Expressly sanctioning in advance a further insurance by other companies on the property, to the extent of $4,500, because they were not notified of the sources from which it was obtained, the claim is, that their policy was not in force when the loss occurred. Nothing but the sternest legal necessity (which, in my judgment, does not exist) should induce such a construction of their contract.

2. There was no force in the reason assigned for nonsuiting the plaintiff, viz., that there was a misdescription of the premises containing the subject insured. The policy described the insured property as being in " a five story brick building, tin roof, situate in the rear of Nos. 195 and 197 Christie street." On the trial it appeared that the building was five stories high, with a cellar underneath. This was no misdescription; but if it were, the defendants could not raise the objection in avoidance of the policy. Their surveyor surveyed the premises prior to the policy being issued, and they thereupon furnished the policy themselves containing the description objected to.

3. I see no objection to the testimony of the acts and declarations of Wilcox as proved. Whether he was the general agent of the company or not, he certainly acted for it in this particular transaction. All the acts and declarations, to which objection was made, related to this special agency. He came to the plaintiff to get him to insure, representing himself to be the agent of the company. He informed the plaintiff that he would give the company a description of the building, and would tell him what premium they would charge; and after the company's surveyor had examined the building, he delivered the policy and received the premium of $70. This is all that he said or did, and whether the proof was admissible or otherwise it could not certainly injure the

defendants. It was of no sort of importance as affecting any issue in the case.

The judgment of the Common Pleas should be affirmed.

DAVIS, J. The policy on which this action is brought describes the insured property in these words:

"$1,800 on stock as a cabinet maker, manufactured and unmanufactured, and in process of manufacture, including materials for making the same, and $200 on tools and benches, all contained in the five story brick building, tin roof, situated in the rear of Nos. 195 and 197 Christie street, in this city."

On the trial it appeared that "there was a cellar under the whole building," and that there were some boards, mahogany, chair tops and other materials in the cellar.

It is claimed, first, that the omission to mention the cellar in the description of the building is a misdescription amounting to a breach of warranty; second, that such omission was the concealment of a fact material to the risk and vitiated the policy. The subject matter of the insurance was the stock and other personal property in the building, and not the building itself. There is no pretense that the property insured was misdescribed.

The locality of the building and the materials of which it was constructed are correctly given, and it is called "the five story brick building." I think there was no misdescription. The words "five story brick building" are appropriate to describe such a building whether there be a cellar or not; a cellar is never called a story in common parlance, but a house is spoken of as of one, two or more stories, with reference merely to the number of floors, or spaces between the floors, above the ground. The word "building" necessarily embraces the foundation on which it rests; and the cellar, if there be one under the edifice, is also included in the term house or building. To speak of a building as being five stories simply communicates the idea of its height above the ground, and neither asserts nor denies that there is a cellar

under it.   If there be a cellar the word building includes it unaffected by the idea of its height above the foundation.

The construction claimed by the appellant would vitiate a large proportion of the policies issued throughout the country.   It is almost universally the practice to describe the building as by naming its material and number of stories, without allusion to the cellar; and where the policy covers the personal property in a house it is universally described " as the furniture, provisions," &c., &c., contained therein; and it has never been held that the property usually kept in cellars was not embraced in such a policy.   There is nothing, therefore, in the points of the appellant based on the idea of a misdescription or of a concealment.

The case of *Wall* v. *East River Ins. Co.* (3 Seld., 370), was one of warranty of the purposes for which the building was used, which the court held was necessarily implied from the description, and it appearing that the building was also used for other purposes, the breach of warranty was held fatal.   In this case there is no pretext for saying that such a question arises.

In the body of the policy, and following the statement of the amount insured and the description of the property, the company inserted in writing these words, "Privilege for $4,500 additional insurance."   The printed portion of the policy contains this provision, "and if said insured or his assigns shall hereafter make any other insurance upon the same property, and shall not, with all reasonable diligence, give notice thereof to this corporation, and have the same indorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect."

The assured effected subsequent insurance on the property to the amount of $4,500, but no more.   Notice was not given to the company, nor were their insurances "indorsed on the policy or otherwise acknowledged in writing."   It is insisted that the defendants' policy was thereby avoided. This question depends altogether upon the effect to be given to the written clause inserted by the company, above quoted.

That clause is made a part of the contract, and is to be construed in connection with all its various provisions. Clearly it gives an express assent to further insurance not exceeding the amount mentioned; but such assent was not necessary to the right to make such further insurance, and the clause is therefore ineffective, unless it operates upon some consequence that would otherwise flow from making the same; or modifies some other provision of the contract itself.

Collating and reading the two clauses, above quoted, together, I think there is little difficulty in giving the construction intended by the parties: "Privilege for $4,500 additional insurance" is given, "and if the insured shall hereafter make any *other* insurance upon the same property, and shall not with all reasonable diligence give notice thereof," &c., this policy shall cease. By force of the written clause, the word "*other*" is enlarged to include the additional insurance for which the privilege is given. So that, in legal effect, the contract reads that if the assured shall make any insurance beyond the amount insured by this policy, for which express consent is hereby given, he shall immediately give notice thereof, and have the same indorsed. In this way full effect is given to every provision of the contract without violence to any; and the question is not one of waiver, but of construction. No notice was therefore required by the contract so long as the insured kept within the bounds set for him by the written clause. But if it be said that this construction deprives the company of a notice in which they intended to secure for a purpose essential to their protection, the obvious answer is, that the whole matter was the subject of contract, and it was equally in their power to have stricken out the clause altogether as to have modified it as they did, or to have preserved it in its full vigor. The court is to carry the contract into effect as the parties have seen fit to make it.

The primary object of the clause under consideration was, I think, to guard the company against fraud by over insurance. So far as its intent may also have been to secure to themselves the more effectively the benefit of 'a *pro rata* dis-

tribution in case of loss, that is saved by another provision of the contract, to be found in the 9th condition of insurance, which requires sworn statements of all additional insurances to be served with copies of the written portions of the policies as part of the proofs of loss. Nothing is clearer than that the object of the company, in inserting the privilege for $4,500 additional insurance, was to declare that that sum was not objectionable as an over insurance; and hence, there is no force in the idea that they still meant to require notices of such insurance, to protect themselves from fraud by excessive insurance.

In *Harper* v. *The Albany Mutual Ins. Co.* (17 N. Y., 194), it is said to be "a well settled point that the written part of a policy shall always prevail over the printed part in cases of repugnancy" (2 Hall, 622); that "the substance of the contract is always in the written part;" and that "nothing but the most stern legal necessity should constrain the court to give it (the policy) a construction which would nullify it and render it a mere deception instead of the protection which the parties to it designed." (PRATT, J., id., 198.)

I think the construction of the policy in this case demanded by the appellant, would operate to render the contract a mere deception instead of the protection designed. But if the construction of the instrument above indicated be not the true one, in my judgment the court below did not err in giving to it the effect of an express waiver of the requirement of notice and indorsements, or acknowledgment of the additional insurance.

The exception to the decision of the court, overruling the objection to proof of "the *acts and declarations*" of Wilcox, is not well founded. The testimony sufficiently showed that Wilcox was the agent of defendant. He applied to Janson to insure, and represented himself to be such agent. He received, in part, the premium in advance, and after the surveyor of defendant had examined the building, he brought the policy to the insured, and then received the residue of the premium. His acts were evidently adopted and acted upon by the company.

If there were any of his declarations which ought not to have been admitted, they were not pointed out by a general objection to all "his acts and declarations." Hence it was no error to overrule such general objection, because it included *acts* which were clearly admissible. But I think the declarations proved were properly regarded as part of the *res gestæ.*

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.