[Piedmont & Arlington Life Insurance Company v. Young.]

a fiduciary relation between the parties, or mutuality or complication of accounts to justify the intervention, or, as is said in *Knotts v. Tarver*, 8 Ala. 743, the court would be filled with suits, which could be better and more cheaply adjudicated in courts of law. Where the accounts are all on one side—where, as in the present case, the demand is purely legal, and its amount ascertainable by a simple calculation, and the remedy at law is adequate, the court will not take jurisdiction.—*Kirkman v Vanleer*, 7 Ala. 217 ; *Crothers v. Lee*, 29 Ala. 337 ; *Dickinson v. Lewis*, 34 Ala. 638. An examination of the evidence is not necessary, for if it supports the averments of the bill, it discloses a case in which the court should not have interfered.

The decree must be affirmed.

# Piedmont & Arlington Life Insurance Company *v.* Young.

## *Action for Breach of Contract on Insurance Policy.*

1. *Life insurance; its benefits and abuses.*—Life insurance, conducted on proper economic principles, is a prudential and valuable investment ; but if premiums be adjusted on a fancy schedule, with a view of enriching corporations or furnishing undue compensation to a horde of employees, &c , the evils of the system exceed all benefits. In deciding the various questions arising in the dealings of such companies with policy holders, the court can not shut its eyes to abuses to which the business is subject, the fanciful and speculative representations often made by agents, and the technical and exacting conditions frequently contained in policies, to the prejudice of the assured.

2. *Verbal notice ; when sufficient.*—Where application or notice is required to be in writing, verbal notice will be sufficient, unless timely objection be made thereto.

3. *Conditions of policies; how construed.*—The conditions and duties of the assured in the policy, are, in general, to be liberally construed in favor of the insured and strictly construed against the insurer.

4. *Responsibility for acts of agent ; failure of notice.*—Where insurance companies transact business through agents, at a distance from the home office, they are bound by the acts of such agents within the general scope of the business, and can not avoid responsibility by instructions, limiting their agent's authority, not brought to the notice of persons dealing with them.

5. *Testimony of table-rates; when inadmissible.*—Where a policy shows on its face that it is of the class called "*participating*,"—especially where the assured so understood it at the time it was obtained—testimony of table-rates of the company for premiums of other kinds of policies, is inadmissible to show that the rate of premium paid was that fixed for a different kind of policy, when it is not shown that such table-rates were brought to the notice of the assured.—

6. *When insurer estopped from denying kind of policy, &c., held by assured.*—Where an assured had obtained what he believed to be a "*participating*" policy, and verbally notified the agent, some time before the next premium fell due, that he wished a paid-up policy, and the agent stated, "it was all right,

[Piedmont & Arlington Life Insurance Company v. Young.]

and he would attend to it," and several times afterwards being approached by the assured, said "it would be attended to," the company is estopped from saying that the assured did not hold a participating policy, and that the one held by assured had, by its terms, been forfeited for non-payment of premiums.

7. *Assignment of policy; when not void.*—Where a policy was issued on the life of a debtor for the benefit of a firm, as his creditors, and provided that it should not be transferred without the approval of the company, a transfer by one partner, of his interest, to another partner, will not avoid the policy nor defeat the transferee's right of action therein, especially where, by the death of the transferring partner, the legal title is cast on the plaintiff as surviving partner.

8. *Necessity of enacting laws on this subject; legislative attention solicited.*—The court avails itself of this occasion to invite the attention of the legislature to the necessity of enacting laws protecting policy holders against the fraud and insolvency of insurance companies, by requiring them, as a condition to doing business, to maintain a reserve of assets, sufficient in amount, at a fixed rate of interest, to cover their liabilities, as is now provided in some of the States, or in such other mode as its wisdom may suggest.

9. *Same.*—The court also refers to the need of amending the laws against obtaining money by false pretenses, so as to prevent and punish the reckless misrepresentations so often indulged in by soliciting agents

10. *Same; explanation.*—Lest its language may be misunderstood, the court adds that, "it found no evidence of fraud or misrepresentation by the agent in this case, nor does the record furnish evidence of intentional wrong on the part of the company."

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Edward B. Young, sr., against the Piedmont & Arlington Life Insurance Company, to recover damages for an alleged failure by said company to comply with what are claimed to be the stipulations of a policy of insurance, issued on the 11th day of January, 1869, by said company. The policy was issued on the life of one Thomas A. Brannon for the benefit of a firm composed of the plaintiff and one Woods, the said Brannon being indebted to said firm for $10,000, which was the amount of the policy. The premiums were paid each year—from January 11, 1869, to January 11, 1871, being $426.00 each. On the 25th November, 1869, Woods assigned his interest to his partner, the plaintiff, which assignment was written and approved by one A. A. Walker, the agent of the company who issued the policy. After the payment of the first and before the payment of the second premium, the said company took the place of the Piedmont Real Estate Company, and became responsible for the latter's obligations. Subsequent to the transfer of the policy and before suit brought, the said Woods died, leaving the plaintiff Young the only surviving partner of said firm. In December, 1871, about a month before the premium payable January 11, 1872, was due, the plaintiff notified said Walker, the company's agent, that he did not intend to pay any more premiums on said policy, but wanted a paid-up

policy for the even dollars of premiums paid, as stipulated in the conditions of the policy. Walker replied that it was all right and he would attend to it—and upon being afterwards approached, made the same reply. The company refused to issue a paid-up policy or to return the premiums.

On the back of the policy is a printed "Notice," to which allusion is made in the policy, in the following words: "Accepted by the assured as forming a part of this contract." In this notice so "forming a part of this contract," there is a stipulation or provision in these words: "If, after the payment of not less than two annual premiums, an ordinary life policy, with profits, should cease by the non-payment of premiums, then, upon written application of the assured within thirty days from the time of such ceasing (exclusive of the thirty days grace) a new policy will be issued for the amount of cash premiums in even hundreds of dollars received by said company."

The appellee claims that, by the terms of the contract, he was entitled to make, and did make substantially, an application for a new or paid-up policy at the time, in the manner and upon the conditions required by the contract, and that appellant violated the contract in failing and refusing to issue the same to him. Appellant denies this assertion. Appellee also claims that appellant, by its agent, waived a strict compliance with the terms of the contract in reference to the application for a paid-up policy. Appellant denies, 1. That said company, or appellant, ever contracted to issue any new, or paid-up policy, in any event; 2. That appellee has any right to ask for or receive such policy; 3. That application for such paid-up policy was ever made; 4. That appellant ever waived any rights or stipulations of the contract.

It is also claimed by the appellee that three years having expired, the appellant can not, after that time, by the provisions of the contract, take any advantage of any false representations made in the application, or of any failure to comply with the terms upon which the company agreed to issue the new or paid-up policy. The appellant denies that there are any provisions in the contract by which the company waived any of the terms or stipulations which prohibit its agent from waiving or varying the terms of the contract at any time; but states that there is in the "notice" which the parties "accepted as a part of the contract," an express provision that an agent should not have the power or authority to alter, vary or waive any part of the contract, and notice to the same effect is printed on the margins of the policy, and of the application, and on the renewal receipts.

[Piedmont & Arlington Life Insurance Company v. Young.]

On the trial, exceptions were reserved by appellant to the rulings of the court in admitting the following in evidence before the jury:

1. Conversations between A. A. Walker, appellant's agent, and E. B. Young, in December, 1871, in reference to obtaining a paid-up policy.

2. Conversation between Thos. A. Brannon and A. A. Walker on the same subject, about the same time.

3. Conversation between J. H. G. Martin and Thos. A. Brannon, on the same subject.

4. The renewal receipts.

And appellant reserved exception to the ruling of the court in refusing to allow the proof, that after a careful examination of the books in the office of the company, in Richmond, no entries could be found in reference to the application for a paid-up policy. And also in excluding from the jury a pamphlet or circular offered, which the witness stated was substantially the same as the one referred to in the application as "Table No. 1, pamphlet," or any part thereof, which pamphlet, as evidence, was objected to by appellee, on the ground that no proof was offered that it had been exhibited to any of the parties at the time the contract was made.

Other exceptions were reserved to the rulings of the court by the appellant, all of which are now assigned as error.

JOHN A. FOSTER, and E. J. KIRKSEY, for appellant.—1. The testimony "that the first premium was paid out of the funds of Young & Woods," should have been excluded. The company and said firm, and the agent, regarded Brannon as the party who contracted to pay the premiums. If another shall step in and pay the premiums, and appellant shall accept them, this payment can not change the contract so as to confer the right of Brannon upon the party so paying. The testimony, then, is irrelevant where Brannon is not a party. Even if Young & Woods acquired any right, E. B. Young, the appellee, is not "Young & Woods," nor does he sue as surviving partner; then how can appellee stand in their shoes? The assignment to him is wholly void. It was not made as prescribed in the contract. And Walker's action in writing and approving the transfer, is no waiver of the stipulations of the company, because the contract itself, expressly says that an agent shall not make such waiver. Appellee must have known this, and if he was careless in not reading and understanding the contract, he alone is responsible.—*Ervin v. N. Y. Central Ins. Co.*, 3 S. C., 213 (New York). The transfer being void, and appellee being the only plaintiff in

the action, none of the proof of payments made are pertinent. *Smith v. Saratoga County Company*, 1 Hill, 497 (N. Y.); S. C. 3 Hill, 508; *Bennett & Martin v. Eufaula Home Insurance Company*, 46 Ala. 9; *Governor v. Campbell*, 17 Ala. 566; *Pike v. Elliott*, 36 Ala. 69; *Mann v. Herkimer County Insurance Co.* 4 Hill, 187; *Boddle v. Chenango County Insurance Company*, 2 N. Y. 53; *Van Buren v. Wells*, 19 Wend. 203; *Elliott v. Gibbons*, 31 N. Y. 67.

2. The conversations between Walker, the agent, and appellee, and between Walker and Brannon, should have been excluded, because they do not relate to the performance of the stipulations. The contract is, that the "assured," in writing, must make the application for a paid-up policy to the home office within the period stipulated in the policy. The paid-up policy, moreover, can issue in behalf of the same beneficiaries only for whom the original was drawn, as they alone are entitled to all the proceeds of the latter, in whatever form, and, if any change is desired in policies issued, the old policy *must* be returned to the home office *before* another policy issues in its stead.—*Breasted v. Farmers Loan & Trust Co.* 4 Hill, 73, and S. C. 8, N. Y. 299; *Fowler v. Mutual Life Insurance Company*, 4 Laws. 202 N. Y.; *Van Zandt v. Mutual Benefit, &c.* 55 N. Y. 169; *Horton v. Equitable Life, &c.*, 2 Albany Law Jour. 255; *Beadle v. Chenango County Ins. Co.* 3 Hill, N. Y. 161. The books, though full of authorities to sustain the principle that an agent may waive the conditions, but in all we can find no authority which goes to the length of saying that an agent can waive stipulations when there is a printed notice on the back of the policy depriving him of that power, to which allusion is made as a part of the contract in the policy.—See *Mound City Ins. Co. v. Huth*, 49 Ala. 530; 1 Phillips on Insurance, 68; Story on Agency, 19; 2 Greenl. 215; May on Ins. § 143.

3. The court erred in excluding as evidence, the pamphlet, "Table No. 1," showing the tables of rates on thirteen different plans, and explanations of these tables, showing the conditions and advantages of the company in its business. The only objection by appellee to the introduction of the several parts of this pamphlet was that no proof was offered that it had been exhibited to any of the parties at the time the contract was made. All other objections are to be considered waived.—See numerous cases in 1 Brick. Dig. p. 887, § 1194. (The argument then goes on to show that the parties did know of the pamphlet, &c.)

4. The testimony of the witness, Shields, as to what are now the rates of appellant on policies *with profits* and *without profits*, should have been admitted. The Alabama decisions

cited in 1 Brick. Dig. p. 809, § 81, leaves no doubt as to the error of the court in excluding it.

5. (The brief contains several other points, which, if material, can not be here condensed with justice to the arguments sustaining them.)

S. H. DENT, *contra.*—1. Was the policy such a contract as gave the plaintiff the right to demand a paid-up policy for the even dollars of premium paid? In the solution of this question, we must be guided by the contract or policy. It is evidently a policy with profits, or a "participating" policy. The words printed on the margin are significant or conclusive on this question.—*Patrick & Wife v. Phœnix Mutual Life Insurance Company*, 44 Vt. 481; S. C. 3 Bigelow's Life & Accident Ins. Reports, 777. For rule as to construing policies, see *M. & M. & D. M. Ins. Co. v. McMillan & Son*, 27 Ala. 77. The appellants failed to lay a proper predicate, for the introduction of the evidence about "Table No. 1," by failing to show that the said table or pamphlet offered, was shown to plaintiff (appellee).

2. Was the demand made by Young of Walker a substantial compliance with the contract, or was the conduct of Walker, the agent of the defendant, a waiver of the requirement in the policy that the demand should be in writing?

We insist that Walker, as the general agent of the company, had the right to bind the company by his conduct, and to waive that requirement of the contract which called for the demand in writing.

The acts of the agent, acting within the apparent scope of his powers, binds the company.—Bliss on Life Insurance, pages 438–9, 443, 449–50.

We make this further point, that the contract being complete in itself, no parol evidence was proper to change or vary that contract. If the policy did not correctly represent the contract and there was a mistake, then the only forum in which that mistake could be corrected, is in a court of chancery.—1 Brick. p. 680.

As to the demand being made of the agent and the company being bound by his acts, see the following authorities: *Carriage v. Atlantic Ins. Co.* 40 Geo. 135; *Miller v. Phœnix Ins. Co.* 27 Iowa, 203; *Walsh v. Ætna Life Ins. Co.* 30 Iowa, 133; *Miller v. Mutual Ben. Life Ins. Co.* 41 Iowa, 216; *Van Allen v. Farmers' Joint Stock Ins. Co.* N. Y. Supreme Court Reports, 11, 4 Hun. p. 413, and the authorities there cited, which are many and full. The head-note of this last case is as follows: "A general agent of an insurance company may waive the performance of a condition inserted in the policy

for the benefit of the company."—See, also, last quoted from 4 Hun. N. Y. p. 800; the case of *Shear v. Phœnix Mut. Life Ins. Co.* and the authorities there cited, to the same effect as last case and head-note quoted above; also, Brick. Dig. vol. 1, p. 63, §§ 159, 160 and 161; 53 N. H. *Currier v. Continental Life Ins. Co.* p. 538; Bliss on Life Ins. pp. 620, 621.

The right to maintain this action, if the refusal to issue the policy was wrongful, is abundantly shown by the following authorities: Bliss on Life Ins. p. 673, § 425; *McKee v. Phœnix Ins. Co.* 28 Mo. p. 383; 1 Brick. p. 141, §§ 75, 76, 77; *Brasswell v. Am. Life Ins. Co.* 75 N. C. 8.

In respect to the transfer to Young by Woods, no question was raised on that in the court below; but I see it is raised here by the brief of counsel. I refer to the following authorities to show that there is nothing in that point, even if the agent of the company had not approved the transfer: *Burnett & Martin v. Eufaula Home Ins. Co.* 46 Ala. 11, and the authorities there cited; *Pierce v. Nashua Fire Ins. Co.* 50 N. H. 297. The transfer was by one of the original partners to the other.

3. (The brief goes on to discuss the demurrers, evidence and charges).

STONE, J.—Life insurance, like fire insurance, conducted on proper economic principles, is, no doubt, a prudential and valuable investment. Its tendency is to equalize and adjust the burden of domestic sustentation, so as to provide for the families of the short lived, at the expense of those who live longer. The annual premiums paid by the assured, are graduated by the average length of human life; so that the families of those who are cut down before they reach the average age, share in the surplus paid in by those who are spared beyond that period. To this common fund to meet death losses, there must be added a sufficient sum to defray the administration expenses of the institution, with a margin to cover contingent excessive mortality. Properly conducted, with a view to these ends, and only to these ends, life insurance is worthy of public patronage.

But if the premiums be adjusted on a fancy schedule, with a view of enriching the corporators, or of furnishing undue compensation to a numerous army of officers and employes, or of squandering the accumulations in extravagance or ill-advised experiments, then the evils of life insurance exceed all possible benefits that can be derived therefrom.

Since the close of the late sectional war, life insurance has become a business—we may say, a large business—in the Southern States. Agents have flooded the land, and have

vied with each other in extolling its benefits in general, and particularly the excellencies of the companies represented by them respectively.  Each insurance company has been, in turn, praised for some boasted specialty, which it was contended should commend it to particular confidence and patronage.  When one agent failed to convince, another, more fluent or more reckless of speech, has succeeded in overcoming all objections raised; and the result has been that millions, which the South was poorly able to part with, have found their way into these institutions, which only here and there a death loss paid, has gladdened one family, and furnished to the company an occasion for trumpeting to the world the beauties and benefits of life insurance.  Policy holders have suffered grievously, in the matter of excessive premiums exacted from them, to meet a too expensive administration of the affairs of such corporations.

Another fruitful source of loss to policy holders, has been the numerous and disastrous failures of life insurance companies.  Such failures, when the companies have succeeded in establishing a business, are without excuse, and should be ascribed to incompetent or dishonest administration.  The losses from these failures have been very great.

But there has been another cause of loss to the policy holder, which has been much more severely felt than either of these.  In making application for a policy, the applicant only sees and knows the soliciting agent.  Large dividends to be distributed, and reduction of premium as a consequence thereof, are among the benefits he is assured will accrue to him.  Two propositions are prominently presented to him; gradual reduction of the annual premium he will be required to pay, and the gross sum his family will enjoy at his death. And, in most cases, he is informed that after paying a given number of annual premiums, should he be unable or unwilling to make further payment, he can obtain a paid-up policy, for the proportion of payments made by him.  All this occurs before he receives his policy.  Nothing said to him of the strict process by which he is to obtain a paid-up policy, or of the many clauses formed in the body of the policy, or in the note endorsed upon it, which look to a forfeiture of the insurance.  When the policy comes, he usually puts it away without perusal; or if he read it, and be not skilled in the law, the probabilities are that he will not understand the technical strictness required of him.  He knows only the soliciting agent in the transaction, and he looks to him, and to him alone for counsel.

We do not say the portraiture above is the universal rule. There are honorable exceptions to it, both in companies and

agents.   But the picture we have hastily drawn, is of sadly frequent presentation.   The hundreds, if not thousands of confiding persons, who, when they asked for paid-up policies, or cash surrender values, have been met with the cold response that, by reason of some strict rule they had failed to observe, their policies were forfeited, will attest the fidelity of the sketch.   But these views are not entirely original with us.   The deceptions practiced by life insurance companies, through agents of their own appointing, have several times called forth the animadversions of the courts of the country.

In *Insurance Company v. Wilkinson*, 13 Wal. 222, 234, the court said, "It is well known, so well that no court would be justified in shutting its eyes to it, that insurance companies organized under the laws of one State, and having in that State their principal business office, send agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of the value and necessity of life insurance, and of the special advantages of the corporation which the agent represents. They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured.   The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, rarely sees or knows any thing about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance, as the full and complete representation of the company, in all that is said or done in making the contract.   Has he not a right to so regard him?   It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this, and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argument being that, as to all other acts of the agent, he is the agent of the assured.   This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon.   But to apply such a doctrine, in its full force, to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims.   The tendency of the modern decis-

ions in this country, is steadily in the opposite direction. The powers of the agent are, *prima facie*, co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal."

In *Miller v. The Mutual Benefit Life Insurance Company*, 31 Iowa, 216, 226, speaking of the powers of a soliciting agent, and of notice to him, the court said: "It is quite time that the technical constructions which have pertained with reference to contracts of this kind, blocking the way to justice, and leading to decisions opposed to the general sense of mankind, should be abandoned, and that these corporations, grown opulent from the scanty savings of the indigent, should be held to the same measure of responsibility as is exacted of individuals. It follows that, in our opinion, the court did not err in instructing the jury that the defendant was bound by notice communicated to its agents."

In *Van Allen v. Farmers' Joint Stock Ins. Co.* 4 Hun. (N. Y.) 413, it is said, "A parol waiver of a condition in a policy is good, notwithstanding a provision in the policy that nothing but a written agreement, signed by an officer of the company, shall have that effect. A general agent of an insurance company may waive the performance of a condition inserted in the policy for the benefit of the company."

In the case of *Malleable Iron Works v. Phœnix Ins. Co.* 25 Conn. 465, the question raised was whether the insurance company was liable for acts, representations and omissions of duty on the part of its agent. The defense was, that in the service complained of, the agent was acting outside of his authority, and that he was, *pro hac vice*, the agent of the assured. He had been furnished by the company with printed blank proposals, containing proper questions to be answered by the applicant; and he was authorized to receive and forward applications for insurance. The court said, "We think there must be an incidental power in the agent, adequate to the explanation of the description of property which is to be insured, or the meaning of words and phrases, and the application of answers to the subject matter. We do not say that an insurance agent is, of course, a general agent, with no limitation; but, only that he is, in certain cases, clothed with an incidental power to perfect that which is committed to his care. The agent was to obtain and forward a perfect application. It was within the sphere of his

duty to explain the questions, and decide for himself and the *bona fide* applicant, what was a satisfactory answer, and how the answer should be applied to the subject. In such a case, the agent can not be said to make the insurance himself, but his principals do it at the home office, obtaining only through him the necessary information." And the company was held bound by his acts.

In the case of *Rowley v. Empire Ins. Co.* 36 N. Y. 550, it was declared that "a policy of insurance should not be avoided for an error by the agent of the company, acting within the general scope of his power, on the artificial and unwarranted assumption that he is the agent of the other party to the contract."

In May on Insurance, § 143, is the following language: "It has, in fact, been very generally held that knowledge by, or notice to the agent, of the inaccuracy of a statement in the application upon which a policy is issued, after such notice or knowledge, binds the company and prevents them from availing themselves of the inaccuracy in defense, some of the cases regarding the facts as amounting to a waiver, and others as working an estoppel *in pais.* And this is true even when the policy provides that when the application is made through an agent of the company, the applicant shall be responsible for such agent's representations. And, indeed, the tendency of the courts generally, is daily becoming more decided to hold that such an agent may waive any of the conditions of the policy, and bind the company by such waiver."

This is supported by a vast array of authorities. Substantially the same doctrine is asserted in Bliss on Life Insurance, §§ 281, 287, 288. See, also, *Beebe v. Hartford Ins. Co.* 25 Conn. 51 ; *Lightbody v. North Amer. Ins. Co.* 23 Wend. 18 ; *Plumb v. Cataraugus Co.* &c. 18 N. Y. 392 ; *Coreelis v. Hannibal Sav. Ins. Co.* 43 Mo. 148 ; *Hodgkin v. Farmers' Mut. Ins. Co.* 34 Barb. 218 ; May on Insurance, § 144 ; *Woobury Sav. Bank v. Charter Oak Ins. Co.* 31 Com. 517 ; *Hanitz v. Equitable Ins. Co.* 40 Mo. 557 ; *Beal v. Park Ins. Co.* 16 Wis. 241 ; *Davenport v. Peoria Ins. Co.* 17 Iowa, 276 ; *Howard Ins. Co. v. Bruner,* 11 Har. (Penn.) 50 ; *Lycoming Ins. Co. v. Schollenberger,* 8 Wright, 259 ; *Currier v. Continental Life Ins. Co.* 53 N. H. 538 ; *Alman, Miller & Co. v. Phœnix Ins. Co.* 27 Iowa, 203 ; *Canngi v. Atlantic Fire Ins. Co.* 40 Geo. 135 ; *Post v. Ætna Fire Ins. Co.* 43 Barb. 351 ; *Ames v. N. Y. Union Ins. Co.* 14 N. Y. 253 ; *Carrol v. Charter Oak Ins. Co.* 38 Barb. 402 ; *Van Bories v. U. S. Life Ins. Co.* 8 Bush. (Ky.) 133 ; *Benedict v. Ocean Ins. Co.* 31 N. Y. 389 ; *Smith v. Ætna Ins.*

*Co.* 5 Lansing, 545; *Walch v. Ætna Life Ins. Co.* 30 Iowa, 133; *Haugh v. City Fire Ins. Co.* 29 Conn. 10.

So, it seems that where application or notice is required to be in writing, verbal notice will be sufficient, if not objected to.—See *Liddle v. Market Fire Ins. Co.* 29 N. Y. 184; *Bachen v. Williamsburgh City Ins. Co.* 35 N. Y. 131; *Bodime v. Exch. Fire Ins. Co.* 51 N. Y. 117.

Insurance policies are framed by insurance companies with great care and caution, with a view of limiting their liability as much as possible; and in most cases impose conditions and duties on the assured, to be performed with marked particularity. They should be, and are liberally construed in favor of the assured; which conditions and provisos are strictly construed against the insurer.—Bliss on Life Ins. § 404.

The policy, in the present case, shows on its face that it is of the class called "participating."—See 1 Phil. on Ins. 47; *Patch v Phœnix Mut. Life Ins. Co.* 44 Verm. 481. We think Mr. Young so understood it at the time it was applied for and obtained, and there is no evidence in the record tending to show the contrary. The testimony of the table rates was rightly ruled out for several reasons—one of which is, that it is not shown to have been, at any time, brought to the notice of the assured.

The present case presents strong claims to our consideration favorable to the assured. It is proved, and not denied, that in December, 1871, Young, the assured, notified Walker, the agent, from or through whom he had obtained the insurance, that he would pay no more premiums, and that he wanted a paid-up policy. Walker was still the agent of the defendant corporation. Instead of informing Young that his policy was non-participating, and hence, not of a class which authorized him to obtain a paid-up policy; and instead of informing him that he must make his application in writing, Mr. Walker, the agent, replied that it was all right, and he would attend to it. This was a month before any default in the non-payment of premium. Walker was frequently afterwards called on to know if the paid up policy had arrived, and at no time intimated a doubt of Young's right to it. When he first communicated Young's request to the insurance company in Virginia, is not shown. Nor, judging from the language of his letter, to be presently copied, does there appear to have been any answer received to his first communication. He writes as if he thought Young was entitled to a paid-up policy, and had no information that the right was denied. His letter to the president of the insurance company, dated May 6th, 1873, is as follows:

"I again write you in reference to T. A. Brannon's policy, favour of Young & Woods. There were three payments of $426 each, made upon that policy, making in the aggregate $1,278. A paid up policy for that amount is wanted. Your immediate attention will oblige,

Very truly yours,

A. A. WALKER."

To this the president replied promptly, that the policy *ceased* for non-payment of premium in January, 1872.

We hold that the conduct of the agent in this case, and of the insurance company, estops the latter from denying that the demand of a paid-up policy was rightly made, even if such estoppel were necessary to protect his right, which we do not assert.

There is nothing in the objection that Young alone sues, based on the transfer made by Woods, his co-partner, without the approval of the company.—*Burnett v. Eufaula Home Ins. Co.* 46 Ala. 11; *McMasters v. Ins. Co.* 25 Wend. 379; *Pierce v. Washna Ins. Co.* 50 N. H. 297. If this objection were available at any time, it ceased at the death of Mr. Woods, before this suit was brought, which vested in Young, the surviving partner, the sole right to sue.

The measure of damages in this case, according to the proof, was the money value, at the time of the trial, of a paid-up policy of $1,278, on the life of T. A. Brannon. The record contains no testimony or rulings of the court on that question, and hence, no question bearing on that, is presented for our consideration. The charges asked and not given assumed an enormous measure of damages, and were rightly refused. None of the charges asked should have been given.

The legislatures of most of the States have enacted statutes for the protection of policy-holders against insolvency and fraud of life insurance companies. As a condition of doing business, they are required to maintain a reserve of assets, sufficient in amount, at a rate of four to six *per cent.* interest, to cover their liabilities. The modern tendency is to increase the required reserve, to a standard of protection at a low rate of interest, say four and a half *per cent.*, and in some cases four *per cent.* There has been no legislation in Alabama on this subject; and we avail ourselves of this occasion to invite the attention of the legislature to it.

Another question for legislative inquiry. We have penal enactments which punish the offense of obtaining money under false pretenses with great severity. It is worthy of consideration if some amendment is not necessary, to embrace, restrain and punish reckless misrepresentations,

[Kelly et al. v. Trustees of the Alabama & Cincinnati R. R. Co.]

too frequently indulged in by soliciting agents. Possibly present statutes would reach many cases; but it would be well that the statutes should denounce this crime against the public in no uncertain terms. And insurance companies will become much more circumspect in the selection of their agents, if they be held civilly accountable for all the representations and assurances held out by such agents in soliciting insurance.

Lest our language may be misunderstood, we feel it our duty to say we find no evidence of fraud or misrepresentation by the agent in this case; nor does the record furnish evidence of intentional wrong in the company.

We find no error in the record prejudicial to appellant, and the judgment of the Circuit Court is affirmed.