### AMSDELL v. CHERRY GAS & OIL CO.

(Supreme Court, Equity Term, Erie County.  December, 1913.)

MINES AND MINERALS (§ 77*)—OIL LEASE — CONSTRUCTION — WRITING AND PRINTING.

Where an oil lease, in the printed portions thereof, provided that the company could surrender the lease, and all liabilities would cease, and in a written portion provided that defendant should furnish plaintiff gas from a well "so long as it was marketed from said well," defendant could not, by surrendering the lease, escape liability from furnishing the gas, since, in conflict between written and printed portions, the writing will prevail.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 204; Dec. Dig. § 77.*]

Action by Catherine Amsdell against the Cherry Gas & Oil Company.  Judgment for plaintiff.

Walter F. Hofheins, of Buffalo, for plaintiff.
Fred J. Blackmon, of Buffalo, for defendant.

WHEELER, J.  On the 16th day of September, 1911, the parties to this action entered into a written agreement, commonly known as an oil and gas lease.  The lease was upon a printed form used by the defendant.  By this lease the defendant was given the right to drill and operate oil and gas wells on the plaintiff's farm "for the term of one year from date, and as long thereafter as oil or gas is found, or the rent for the failure to commence operations is paid."  The defendant agreed to deliver to the plaintiff one-sixth part of all oil produced from such wells, and also to pay an annual rental of $100 for each and every gas well drilled, and also to furnish sufficient gas for heating and lighting one dwelling house on the premises from the wells drilled. The defendant agreed to commence operations within six months, otherwise the lease to become void and of no effect—

"unless the said party of the second part shall thereafter pay for said premises the sum of $———, *gas as specified following*, as a rental on said premises, which payment said first party agrees to extend the time of commencing operations so long as the said sum is paid or continued to be paid *as specified following* to be good and sufficient payment of any money due on this lease."

All the foregoing extracts from the lease are printed, saving the words above underscored, which are in writing.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Immediately following the clause quoted, there was incorporated into the lease the following clause in writing:

"Second party hereby agrees to furnish gas free of charge for one dwelling house on said premises from well about to be drilled on land of Adam Finkbeiner as long as gas is marketed from said well, and as soon as well is finished, second party agrees to pipe line to said first party's land."

It was further provided by printed portions of said lease that the gas and oil company should "have the right at any time to surrender this lease to said party of the first part, after which all payments and liabilities to accrue under and by its terms shall cease."

The well on the Finkbeiner farm was drilled, and gas was piped, as agreed, to the plaintiff's premises. On or about October 8, 1912, the defendant served notice of its termination of the lease on and after November 7, 1912, and threatened to discontinue and cut off the gas supply from the Finkbeiner well. This suit is to enjoin the threatened action; an injunction pendente lite having been obtained in the meantime.

The result of this litigation turns upon the construction to be given the lease in question. The plaintiff contends the lease provides for a supply of gas from the Finkbeiner well so long as gas is marketed from it. The defendant contends that by the lease it had the right to terminate it, and the obligation to supply gas ended with the termination of the lease, and that the supply of gas was simply in lieu of a cash payment to be made for the privilege of extending the life of the lease, in the event of a failure on its part to commence drilling operations within six months as agreed.

The contract being partly printed and partly written, the written portions must prevail over the printed portions. In cases of repugnance between written and printed clauses of an instrument, the written clauses will prevail over the printed. Harper v. Albany Mut. Ins. Co., 17 N. Y. 194; Benedict v. Ocean Ins. Co., 31 N. Y. 389; Heyn v. N. Y. Mutual Life Ins. Co., 192 N. Y. 1, 84 N. E. 725. The written part, whereby the gas and oil company agrees to furnish gas from the Finkbeiner well, is a positive and affirmative undertaking to do so *as long as gas is marketed from said well.* If it had been the intention of the parties to have limited the operation of this clause to the time that the lease remained in force, or until terminated by notice, it is plain no such language would have been used. The language is wholly inconsistent with such an interpretation, and cannot be harmonized with the defendant's contention. The plaintiff may well argue that the agreement to supply gas free from the Finkbeiner well, so long as the defendant marketed gas from it, was one of the considerations which supported the making of the lease at all. The contract did not absolutely obligate the defendant to put down a single well, but the lease tied up the farm indefinitely from all drilling operations so long as gas was furnished the plaintiff from the Finkbeiner well, and the plaintiff might well have hesitated to enter into any such agreement without the assurance of the clause that she was to have gas so long as the defendant marketed gas from the Finkbeiner well.

But it is urged by the defendant that it had the right to terminate

the lease altogether, and such termination ended the obligation to further supply gas. The answer to this argument is that the written clause must prevail over the printed portion, and that the written clause is wholly at variance in this particular with the printed part. It is further argued by the defendant that the written clause relates back and must be construed in connection with the preceding portion of the agreement providing for an extension of the time to sink wells, if not done within six months from the date of the lease.

Undoubtedly, so long as the defendant supplies gas from the Finkbeiner well, the defendant's time to drill wells on the plaintiff's farm is extended, but this provision of the agreement does not cut down or limit the plain and explicit agreement of the defendant whereby, in consideration of the making of the lease, it undertook to supply gas from the Finkbeiner well *"as long as gas is marketed from said well."* We think this court must give force and effect to the plain language of this agreement.

This leads us to the decision that the plaintiff's case has been established, and that she is entitled to the injunction relief asked. Let a decision be prepared accordingly. So ordered, with costs of the action to the plaintiff.