## Rental of School from Authority

BOLLA, Deputy Attorney General, May 7, 1952.— We are in receipt of your letter of February 5, 1952, requesting to be advised, in construing the provisions of clause (b) of section 2511.1 of the Public School Code of March 10, 1949, P. L. 30, as amended by the Act of January 21, 1952, P. L. 2195, 24 PS §25-2511.1, as to whether or not rentals used for the purpose of State reimbursement under this act may, in addition to amortizing the actual cost of the building structure and equipment, amortize the cost of such items as:

(a) Cost of the site;

(b) Cost of excavating, grading and landscaping the site;

(c) Cost of building roadways, walks, etc.;

(d) Cost of architects;

(e) Expenses incurred in connection with the forming of the municipality authority such as attorneys' fees, advertising, printing, etc.

The pertinent part of section 2511.1, supra, is as follows:

"(b) The Commonwealth shall also pay, commencing with the school year one thousand nine hundred fifty-one-one thousand nine hundred fifty two (1951-1952) and annually in each school year thereafter, to each school district which shall have entered into an approved lease with a municipality authority or with a non-profit corporation for the rental of a school building or buildings or providing education equipment, an amount to be determined (1) by multiplying the school district's standard reimbursement fraction by fifty one-hundredths (50-100) and by the rental or share thereof paid by the school district during the prior school year under its leave with such municipality authority or non-profit corporation, or (2) if the district's standard reimbursement fraction is greater than five thousand nine hundred ninety-nine ten thousandths (.5999), by muliplying the standard reimbursement fraction by itself and by the annual rental or share thereof paid by the school district during the prior school year under its lease with such municipality authority or non-profit corporation. . . ."

Safeguards on the expenditure of the State funds are provided for in the Public School Code, supra, in section 790, by providing that the school district shall have power to act only upon the written approval of the Department of Public Instruction; and in section 2511.1, supra, by providing that no payment shall be made to any school district unless the lease with the municipality authority is approved by the Department of Public Instruction. In the exercise of that safeguard

the Department of Public Instruction will only give approval after satisfactory proof has been made to it that the expenses incurred are reasonable and not extravagant, and that the project is within the building program as set forth by the department.

Referring to the preceding subsection of section 2511.1, supra, such rentals are to reimburse the school districts for costs on account of *"erecting or sharing in the erection of a building or buildings."*

The purpose and intendment of the Act of January 21, 1952, supra, is to provide State reimbursement to those school districts that enter into a contract with an "authority" wherein the school district "rents" from the authority a school building which the school district itself could not build because of the lack of funds or having reached its maximum indebtedness of legal debt limit.

In 9 Am. Jur. 198-99, Buildings, §2, in the definition of a building we have:

". . . As used in statutes, the meaning of the word generally depends on the particular subject and its connection with other words and varies in practically every case. In construing such statutes, the intention and purpose of the legislature as manifested in the enactment must control. . . ."

It is necessary to consider each item separately to determine whether or not that item comes within the meaning of building and the cost of the building.

(a)  Cost of the Site—In 12 C. J. S. 379, Building, we have:

"Inasmuch as a structure must of necessity consist of certain integral parts, the term 'building' must, of itself, be broad enough to comprehend any or all of such integral parts. . . ."

In State ex rel. Post v. Board of Education of Clarksburg School Dist. et al., 71 W. Va. 52, 76 S. E. 127, the court said:

". . . Act of 1911, ch. 70, allows the board to 'borrow money and issue bonds for the purpose of building, completing, enlarging, repairing or furnishing schoolhouses.' (b) Does the word 'schoolhouse,' used in the statute, mean land, include necessary land? . . . When the statute says that the money may be used to build houses, it means that it may be used to acquire land for schoolhouses. Necessarily so. It is a necessary implication, if the words do not per se mean land, as here used. Commanded to build schoolhouses, it is an incidental power because indispensable to attain the end. You cannot build a schoolhouse without land on which to build it.

"In view of the law above stated, and in view of the purpose which must have been in the minds of the legislators who enacted the bond section, we hold that the words 'schoolhouses' include land, for schoolhouses. . . ."

In 9 C. J. 684, under the definition of "Building" in footnote $(g)$, we have:

"As including the land on which it stands.— (1) The term 'building' includes the real estate on which it is situated, unless the general meaning of the terms is modified by the language of the context. Gidley v. Lovenberg, 35 Tex. Civ. A. 203, 209, 79 SW 831. . . ."

Section 790 of the Public School Code of March 10, 1949, P. L. 30, as added by the Act of January 21, 1952, P. L. 2195, 24 PS §7-790, provides:

"(1) To sell, lease, lend, grant or convey to such municipality authority, individually or jointly, with or without consideration, any lands, easements or rights in lands which may be deemed necessary for the project, together with any buildings, structures or improvements thereon erected, as well as furnishings and equipment used or useful in connection therewith."

Where land or land and buildings are transferred to the municipality authority without consideration it

must be excluded from the determination of the rental.

Accordingly, it is our opinion that the building and the cost of the building includes the site and the cost of the site.

(b) *Cost of Excavating, Grading and Landscaping the Site.*—In 12 C. J. S. 379, Building, we have:

"Inasmuch as a structure must of necessity consist of certain integral parts, the term 'building' must, of itself, be broad enough to comprehend any or all of such integral parts. . . ."

In 9 C. J. 684, under the definition of "Building" in footnote (*f*), we have:

"As including foundations and cellar.—(1) 'The word "building" necessarily embraces the foundation on which it rests; and the cellar, if there be one under the edifice, . . . If there be a cellar, the word building includes it unaffected by the idea of its height above the foundation':Benedict v. Ocean Ins. Co., 31 N. Y. 389, 394. . . ."

In 18 Words and Phrases, pages 604-05, it is stated:

" 'Grading' includes filling as well as cutting, and technically means the reducing the earth's surface to a given line fixed as the grade and may include filling or excavating, or both: Louisville & N. R. Co. v. State, 193 S. W. 113, 137 Tenn. 341. . . .

"Grading includes cutting as well as filling. Technically, it is the reducing of the surface of the earth to a given line fixed by the city as the grade, and may involve filling or excavating, or both, as shall be necessary to accomplish that object. Ryan v. City of Dubuque, 83 N. W. 1073, 1074, 112 Iowa, 284, citing Smith v. Washington City, 61 U. S. (20 How.) 135, 15 L. Ed. 858."

Landscaping is the laying out of or changing grounds to produce picturesque effects.

The excavating, grading and landscaping of the site are an integral part of the building.

(c) *Cost of Building Roadways, Walks, etc.*—The roadways, walks, etc., designed and planned to provide an ingress and egress to the building and around it so as to make the building accessible, are a part of the building although not in actual contact with the building.

We are of the opinion that roadways, walks, etc., are essential for the completion and convenient use of the building and are a part of it.

(d) *Cost of Architects.*—It is necessary to employ an architect to form and devise plans and designs and to draw up specifications for the building and to superintend its construction. Much depends on his expert knowledge and skill.

It necessarily follows that the cost of an architect is included in the cost of the building.

(e) *Expenses Incurred in Connection With the Forming of the Municipality Authority Such as Attorneys' Fees, Advertising, Printing, etc.* — Subsection (*b*) of section 2511.1, supra, provides:

". . . no payment shall be made to any school district on account of any lease entered into with any municipality authority . . . unless such lease is approved by the Department of Public Instruction . . ."

The wording of this subsection specifically provides that the municipality authority must be in existence before the school district can enter into an approved lease with it. A municipality authority can only be created by virtue of the provisions of the Municipality Authorities Act of May 2, 1945, P. L. 382, as amended, 53 PS §§2900z-1 et seq.

The expenses of incorporating the municipal authority should not be included in determining the amount of rental to be paid by a school district to the municipal authority.

Obviously the more important question is that of expenses after the formation of the authority and whether there may be included the expenses of attorneys' fees, advertising, printing, etc. The "etc." includes the expense of a bond issue, including the fee of a firm of attorneys whose certificate renders the bonds salable.

The Municipality Authorities Act of 1945, supra, provides in section 5 that a municipal authority shall have the power: (i) To borrow money and issue bonds in respect to any project constructed under agreement by the authority; (n) to do all acts necessary or convenient for the promotion of its business and the general welfare of the authority to carry out the power granted to the authority.

Financing charges and legal fees are a necessary expense in any loan which the authority may secure for the purpose of erecting a school building which will be leased to a school district, and these expenses should be reimbursed to the authority as part of the rentals paid by the school district to the authority. Such expenses are regarded as a necessary part of a construction project in private business and they are equally necessary in the case of a project by an authority.

Nothing in the statute prohibits a municipal authority from including such expenses in the calculation of the rental.

We are of the opinion and you are accordingly advised that the State reimbursement to a school district on account of rentals paid by the district to a municipal authority is limited to that portion of such rentals which represents the cost of the building.

The cost of the building includes:

(a) The cost of the site, the expense of excavating, grading and landscaping the site and of constructing roadways and walks thereon, and the architectural fees;

230

(b) The expenses incurred by the authority *after* its formation, such as attorneys' fees, advertising, printing, and financing charges, provided such expenses are incurred for the particular building leased.

The cost of the building does not include the expenses incurred in the organization of the authority, such as attorneys' fees, advertising, printing and filing fees.